David ADAMS, Plaintiff–Appellant,

v.

Nathan A. RICE; Gary T. Dixon; Hazel W. Keith, Defendants–Appellees.

No. 93–6914.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 27, 1994.

Decided Nov. 16, 1994.

## OPINION

WILKINSON, Circuit Judge:

This case presents the question whether the district court abused its discretion under 28 U.S.C. § 1915(d) by dismissing plaintiff's *in forma pauperis* suit as frivolous. Plaintiff alleges that prison officials violated his constitutional rights by retaliating against him for requesting protective custody. Because we find that plaintiff's claims of retaliation are legally and factually baseless, we affirm.

### I.

Plaintiff Adams was first incarcerated at the North Carolina Department of Corrections' ("NCDC") Currituck facility, located in Maple, North Carolina. He then requested a medical transfer to Central Prison, which he received. While incarcerated at Central Prison, Adams petitioned the Director's Classification Committee ("DCC") for protective custody, claiming that unnamed inmates had threatened him. The DCC granted Adams' request and apparently planned to transfer him to the protective custody facility at Odom prison in Jackson, North Carolina. Defendant Nathan Rice, NCDC Institution Command Manager, approved the DCC's decision.

Adams was never transferred to Odom, however. Instead, he was held in segregation (*i.e.,* in a single-cell unit) at Central Prison from January 14, 1992, to September 25, 1992. The record suggests that lack of bed space in Odom's protective custody unit precluded his transfer. The record does not reflect any grievances filed by Adams during this time period.

On August 12, 1992, Adams withdrew his protective custody request from the DCC. He was subsequently transferred to the general prison population at Hartnett Correctional Institution in Lillington, North Carolina. While at Hartnett Adams filed several administrative grievances, to which prison officials responded.

Adams' complaint alleges four retaliatory acts by defendants. He claims that because of his request for protective custody defen-

**ARGUED:** Gail Starling Marshall, Rapidan, VA, for appellant. Neil Clark Dalton, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellees. **ON BRIEF:** Michael F. Easley, Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellees.

Before WILKINSON, HAMILTON, and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge HAMILTON and Judge LUTTIG joined.

dants refused to transfer him to Odom for protective custody, denied him minimum custody status, failed to schedule a parole eligibility date and hearing, and barred his access to the grievance process. The district court held that each of these claims lacked an arguable basis in law or in fact and, accordingly, dismissed them as frivolous. Plaintiff appeals.

## II.

This case arises under the federal *in forma pauperis* statute, 28 U.S.C. § 1915 (1988). In an effort to provide indigents with equal access to federal courts, Congress authorized district courts to waive costs and fees for such litigants. 28 U.S.C. § 1915(a). Congress recognized, however, that the elimination of financial barriers by § 1915(a) does not relieve indigents of the obligation shared by all litigants to refrain from filing meritless claims. Accordingly, Congress balanced the *in forma pauperis* provision with § 1915(d), which vests discretion in the district courts to "dismiss the case ... if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d).

■ Both the language and purpose of § 1915(d) indicate that the discretion it accords to district courts is broad. Congress' use of the word "satisfied" reflects an intent to afford wide latitude to district courts considering dismissal under § 1915(d). *See Denton v. Hernandez,* — U.S. —, —, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992). Moreover, the term "frivolous" also connotes discretion because, as a practical matter, it is simply not susceptible to categorical definition. Although the Supreme Court has loosely defined frivolous claims as lacking "an arguable basis either in law or in fact," *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989), it has declined to fashion too precise a rule. "[D]istrict courts, who are 'all too familiar' with factually frivolous claims, are in the best position to determine which cases fall into this category." *Denton,* — U.S. at —, 112 S.Ct. at 1734 (citation omitted).

■ Indeed, it would defeat the purpose of § 1915(d) to review such dismissals without substantial deference to the district courts. Congress enacted § 1915(d) in order to prevent abuse of the judicial system by parties who bear none of the ordinary financial disin-

centives to filing meritless claims. With a statutory provision whose purpose is to conserve judicial resources, it would be counterproductive to adopt an intensive standard of *de novo* appellate review. For these reasons, we review § 1915(d) dismissals under an abuse-of-discretion standard.

## III.

■ In order to avoid the "unusual power" of district courts pursuant to § 1915(d) "to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833, *in forma pauperis* plaintiffs must meet certain minimum standards of rationality and specificity. For example, "fantastic" or "delusional" claims are clearly baseless and thus insufficient to withstand a charge of factual frivolity. *Id.* at 328, 109 S.Ct. at 1833.

■ In addition, we believe that *in forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal to survive § 1915(d). To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

■ In this case, the district court did not abuse its discretion by holding that appellant's chief claim of retaliation—the denial of protective custody to Adams—was clearly baseless in fact. Here, as in *White v. White,* 886 F.2d 721 (4th Cir.1989), plaintiff's complaint "failed to contain any factual allegations tending to support his bare assertion." *Id.* at 723. The complaint fails to allege how or why defendants retaliated against plain-

tiff. It merely and conclusorily asserts that the denial of protective custody occurred as part of defendants' general scheme of retaliation.

Furthermore, the complaint is nonsensical on its face. It does not make clear why the single-cell housing that plaintiff received, which separated him from inmates who might harm him, was inferior to or even different from protective custody. It appears from the four corners of the complaint that plaintiff was given either the protective custody he requested or its approximate equivalent.

## IV.

■ Legally frivolous claims are based on an "indisputably meritless legal theory" and include "claims of infringement of a legal interest which clearly does not exist." *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833. It follows that claims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution. That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. A claim of retaliation that fails to implicate any constitutional right "lacks even an arguable basis in law," *id.* at 328, 109 S.Ct. at 1833, and is properly subject to dismissal under § 1915(d).

■ Appellant alleges that defendants' retaliation was motivated by his request for protective custody. On appeal, Adams recasts his protective custody request as an exercise of a "right to inform" prison officials of dangerous conditions. This heretofore unrecognized right, appellant argues, is protected under the Constitution because it is necessarily incident to his Eighth Amendment right to be free from the deliberate indifference of prison officials to specific, known risks of harm. *See Pressly v. Hutto,* 816 F.2d 977 (4th Cir.1987).

We are not persuaded that appellant has exercised a constitutional right by requesting protective custody. Appellant's assertion of a "right to inform" states only a claim of entitlement to a particular grievance procedure because he seeks, in essence, a means of bringing complaints regarding his incarceration to the attention of prison officials. As other circuits have recognized, there is no constitutional right to participate in grievance proceedings. *See e.g., Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991).

Appellant also alleges that defendants' retaliation manifested itself in four specific acts of deprivation. He claims that defendants retaliated against him by refusing to transfer him to protective custody, declining to grant him minimum custody status, failing to set a parole eligibility date and hearing, and barring his access to the grievance process. The complaint implies that defendants' refusal to fulfill appellant's various requests violated his constitutional rights.

■ Contrary to appellant's suggestions, the Constitution does not guarantee him any of the above conditions of confinement. Prisoners have no right under the Constitution to be held in either protective or minimum custody. *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *O'Bar v. Pinion,* 953 F.2d 74, 83 (4th Cir.1991) ("[A]dministrative segregation and reclassification ... are ... discretionary administrative acts in which an inmate obtains no liberty interest under North Carolina law."). Nor are inmates constitutionally entitled to parole or its attendant administrative procedures. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Finally, as noted above, the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state. *Flick,* 932 F.2d at 729; *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988). We therefore affirm the district court's dismissal of this case as lacking a basis in law.*

---

* The district court dismissed the case with prejudice. The Supreme Court in *Denton v. Hernandez,* —— U.S. ——, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), indicated that the standard of review for such a dismissal is one of abuse of discretion. *Id.* at ——, 112 S.Ct. at 1734. In this case, we

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

are unable to say that the district court abused its discretion in so dismissing the case. The question with respect to a dismissal with prejudice is often whether "it appears that frivolous factual allegations could be remedied through more specific pleading." *Id.* Since the infirmities here involve, *inter alia,* claims that are frivolous as a matter of law, the district court was entitled to believe that they could not be remedied through more specific pleading. We thus affirm the dismissal with prejudice.