James Arthur BROWN, Plaintiff,

v.

Ronald ANGELONE, et. als., Defendants.

Civil Action No. 95–1051–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Aug. 13, 1996.

342

James A. Brown, Augusta Correctional Center, Craigsville, VA, pro se.

Pamela Anne Sargent, Office of the Attorney General, Richmond, VA, for defendants.

TURK, District Judge.

James Arthur Brown, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that the defendants, officials of the Virginia Department of Corrections (VDOC), violated his constitutional rights by bringing a false disciplinary charge against him in retaliation and by denying him due process protections at the disciplinary hearing.[1] He seeks monetary, declaratory and injunctive relief. De-

fendants have filed a motion to dismiss to which plaintiff has responded, making the matter ripe for the court's consideration. After review of the record, it is the opinion of the court that all of his claims must be dismissed.

In an action brought pursuant to 42 U.S.C. § 1983, a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The allegations in the complaint should be construed in the light most favorable to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### I. Allegations and Claims

Plaintiff Brown alleges the following sequence of events. On March 29, 1995, at about 9:15 a.m., Sgt. Pettry and Officer Hilton saw several inmates hollering out of C–2 Pod window, making statements such as "when the Boulevard opened they (inmates) were going to tear up the place." Officers entered Pod C–2 to quell the disturbance by force. Officer Hilton identified Brown as one of the inmates who had been yelling out the window. Four inmates including Brown were picked out, handcuffed and taken to the administration building for questioning by the captain in the presence of the reporting officers. Officers determined that Brown and two other inmates represented a threat to the secure operation of the institution. These inmates were held in pre-hearing detention and, based on the testimony of Officer Hilton, charged with an institutional offense. Brown protested his innocence, but his plea was ignored.

On March 30, 1995, officials served Brown with formal notice of the disciplinary charge, "Attempting to commit; Inciting to Riot; Offense Code 198b/103." That same day Brown wrote a request to Swisher as hearing

---

1. The defendants named in this lawsuit are: Ronald Angelone, Director of the Virginia Department of Corrections (VDOC); L.W. Huffman, Regional Director of the VDOC; L.M. Saunders, Warden of Augusta Correctional Center (ACC); D. Swisher, Disciplinary Hearing Officer at ACC; Sgt. W. Pettry, ACC officer who reported Brown's disciplinary offense; and Correctional Officer Hilton of ACC.

officer that (1) the log book for March 29 be presented at Brown's hearing and (2) that every inmate present in C–2 pod on March 29 who could verify Brown's whereabouts and innocence be called as a witness at the hearing. In her response, Swisher stated: "You have 24 hours after your charge is served to submit *names* of your witnesses. I have no way of knowing "Every" inmate present on C–2 Pod on 3/29/95 at the time of alleged incident." Brown alleges as he was placed in prehearing detention immediately after the incident and remained there until the disciplinary hearing, he was prevented from seeking inmates who would serve as witnesses for him or to marshal other evidence in his defense.

At the April 6, 1995 disciplinary hearing, Brown called no witnesses. Sgt. Pettry testified about the disturbance at J–4 door with an inmate. Officer Hilton identified Brown as one of the inmates yelling out of the top floor window of C–2 Pod, although Hilton apparently could not understand what Brown was saying. Based on the officers' eye witness testimony, Swisher as committee chairman found Brown guilty and penalized him with fifteen days isolation, 30 days of lost good time, and reference to the Internal Classification Committee (ICC). Brown received credit for the time served in prehearing detention toward his isolation sentence.

On April 11, 1995, the ICC found that Brown was not a threat to the orderly operation of the prison and the next day he was released to the general population. Several inmates told him that they had witnessed the window incident and knew he had not been involved. They also stated that they were willing to provide him with their sworn statements about what happened in order to help him clear up the wrongful charge.[2]

On April 8, while he was still in segregation, Brown appealed his conviction to the warden who approved Swisher's finding on April 25, 1995. Brown subsequently appealed the Warden's decision to the next highest level; this appeal included affidavits from the other inmates who supported Brown's allegations that he had not participated in yelling from the window. This appeal was returned to Brown by the Regional Director, stating that the appeal was incomplete, but advising Brown that he could resubmit it. Apparently, Brown did resubmit the appeal, since on August 14, 1995 he was notified by the Regional Director that the charge had been upheld.

Brown alleges that Officer Hilton accused him of the offense out of retaliation. On March 20, 1995, without any provocation from Brown, Hilton allegedly told him, "You can kiss my white ass." Brown filed a grievance about the incident with prison administrators. Later, when Brown tried to get further administrative review of his April disciplinary conviction, he alleges, his efforts were stymied because officers sided with Hilton and attempted to protect Hilton's reputation. They refused to agree that Hilton would not be assigned to Brown's building or that Brown could take a lie detector test to prove his innocence. At the highest appeal level of the VDOC system, Brown's institutional conviction was upheld. Yet, Brown claims that Assistant Warden Taylor told him that Brown had been released from detention because Taylor did not believe Brown was involved because the incident was out of character from Brown's previous conduct and good behavior.

The court construes plaintiff's complaint as raising the following claims. First, Brown alleges that Hilton brought the disciplinary charge against him out of retaliation for the grievance Brown had filed against Hilton and that other officers conspired with Hilton (Claim 1). Brown next brings several claims against hearing officer Swisher: that his due process rights were violated at the disciplinary hearing because Swisher refused to assist him in locating and calling witnesses or locating evidence as requested (Claim 2); that as a result of Swisher's refusal to help him gather witnesses, Brown was denied the right to present witnesses or evidence in his defense (Claim 3); that Swisher's refusal to help him marshal evidence and witnesses indicates that she is not an impartial hearing officer (Claim 4); that by correcting on the original charge sheet the name of the officer

---

**2.** Several inmates' affidavits were included with Brown's subsequent appeal.

who had identified Brown, Swisher allowed Brown to be tried on an altered charge and denied him the opportunity to have the charge dismissed (Claim 5); that Swisher failed to give Brown a fair hearing because she accepted Officer Hilton's testimony as credible (Claim 6); that conflicting testimony by Officer Hilton undermined Hilton's credibility as a witness and denied Brown a fair hearing (Claim 7); and that Swisher is unfit to render an objective, fair decision in a disciplinary hearing (Claim 8). Finally, Brown claims that his appeals of the institutional conviction should not have been denied (Claim 9), but that the conviction should have been overturned on appeal and expunged from his record (Claim 10).

## II. Opinion of the Court

■ The majority of Brown's claims allege violations of due process in conjunction with his disciplinary hearing and appeals. While convicted prisoners relinquish many rights upon being incarcerated, the due process clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). When an inmate is faced with the loss of good time credits or solitary confinement, prison officials must (1) provide him with advance written notice of the charge against him; (2) keep a written record of the disciplinary committee's findings and the evidence relied on in convicting him; and (3) under limited circumstances, offer him the right to call witnesses. *Id.* The Court in *Wolff* refused to make the right to call witnesses absolute, recognizing that courts must generally defer to the judgment of prison officials in determining situations where an inmate's request should not be granted. *Id.* at 566, 94 S.Ct. at 2979–80. Of course, state regulations may require more stringent procedural protections before such a change can occur. But a state's failure to abide by its own law as to *procedural* protections is not a federal due process issue. *Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir.1990).

■ "[T]he decisions made by prison administrators in their informed discretion have been accorded 'wide-ranging deference' by the federal courts." *Wetzel v. Edwards*, 635 F.2d 283 (4th Cir.1980) (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy. *Superintendent v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *see Smith v. Rabalais*, 659 F.2d 539 (5th Cir.1981); *Kelly v. Cooper*, 502 F.Supp. 1371 (E.D.Va.1980).

■ The court finds that Brown's hearing fully complied with due process. First, *Wolff* does not mandate that the hearing officer assist the inmate in investigating and procuring his witnesses and his documentary evidence for his defense. Indeed, *Wolff* does not mandate that these defense aids be provided at all in certain circumstances, such as where production of another inmate as a witness or piece of evidence at a disciplinary hearing would not comport with the needs of prison officials in keeping order and security. It follows, then, that Officer Swisher's refusal to aid Brown in procuring witnesses or evidence does not, without more, indicate that she harbors any partiality against Brown, but merely indicates that she is doing her job. Moreover, plaintiff was not denied the opportunity to call witnesses at the hearing and was, in fact, able to present affidavits from witnesses in support of his appeal of the warden's decision. The court finds that he was granted the full measure of procedural protection required under federal constitutional law. *Id.* Claims 2, 3 and 4 must be dismissed.

■ Likewise, Claim 5 must be dismissed. In correcting the name of the officer who witnessed the incident upon which the charge was based, Swisher was only doing her duty to keep an accurate, written record of the charge, the proceedings, the decision and the bases for it. *Wolff, supra.* Since she made the correction during the hearing, Brown had opportunity to contribute his arguments and be sure that the record was accurate when she was done. Brown had no constitutional right to dismissal of the charge based on a

typographical error on the charge sheet. Even if such an error might have been grounds for dismissal of the charge under state procedural rules, violation of state rules does not implicate any federal due process right. *Riccio, supra.*

■ Claims 6 and 7 center on the sufficiency of the evidence to convict Brown of the disciplinary charge. As stated above, so long as the decision of the hearing officer (and the decisions of the officers reviewing the conviction on appeal) is based on some evidence in the record, the federal court will not inquire further into the validity of that decision. *Hill, supra.* Under this "some evidence" standard, the court generally relies upon the hearing officer's determinations concerning credibility of witnesses as well. Without more, Swisher's decision to believe Hilton's testimony instead of Brown's does not prove partiality or bias. Brown does not allege any other substantive basis for his charge that Swisher is not able to be an impartial hearing officer. Accordingly, Claims 6, 7 and 8 must be dismissed.

■ *Wolff* did not mandate that prison officials provide inmates with an appeal of disciplinary hearing findings. Indeed, the prison procedures which the court reviewed in *Wolff* did not include an appeal, but the Court did not find this omission to violate due process. *Id.* at 565, 94 S.Ct. at 2979. Thus, any violations of appeal procedures state at most a violation of state law and does not implicate federal due process rights. *Riccio, supra.* Since the court has already determined above that the disciplinary hearing itself comported with the due process requirements under *Wolff,* administrative officials did not violate due process by failing to overturn and expunge the conviction from Brown's record.

■ To the extent that Brown seeks in Claim 10 to get his earned good conduct time restored, the court is of the opinion that the claim is more appropriately filed as a petition for a writ of habeas corpus and dismissed without prejudice under Rule 4 of the Rules Governing § 2254 Proceedings. A petition may be dismissed under this rule if it is clear from the petition that the petitioner is not entitled to relief.

■ A district court is not constrained by a petitioner's style of pleading or request for relief. *Hamlin v. Warren,* 664 F.2d 29 (4th Cir.1981), *cert. denied,* 455 U.S. 911, 102 S.Ct. 1261, 71 L.Ed.2d 451 (1982). To determine whether an action is properly considered a civil rights claim or a habeas corpus petition requiring exhaustion of state remedies pursuant to 28 U.S.C. § 2254(b), a court must consider whether the "core" of the petitioner's claim concerns the fact or duration of his confinement and whether a claim of damages is ancillary to and dependant on a favorable resolution of the length of his confinement. *Todd v. Baskerville,* 712 F.2d 70 (4th Cir.1983). If the core of the claim does concern the fact or length of confinement, then the proceeding is in habeas. *Id.* In this case, plaintiff is clearly contesting the length of his confinement in the Virginia prison system. Accordingly, plaintiff's exclusive initial cause of action on this claim is in habeas. *Id.*

■ Once the claim is construed as a petition for a writ of habeas corpus, the initial mislabeling of the action would not normally require dismissal. *See Gordon v. Leeke,* 574 F.2d 1147 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). Provided the claim meets the threshold requirements of § 2254, the court could address it on the merits. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ In this action, however, the plaintiff has provided no evidence that he has sought relief in the state courts. Absent a valid excuse, a prisoner must first present his claim to the state courts. § 2254 and *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). If the state remedies have not been exhausted, the petition must be dismissed. *Slayton v. Smith,* 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971).

In Virginia, an inmate can exhaust his state remedies in one of two ways. First, he can file state habeas petition with the circuit court where he was convicted, with an appeal of an adverse decision to the Virginia Su-

preme Court. Va.Code Ann. § 8.01–654. Second, he can exhaust his remedies by filing a state habeas petition directly with the Virginia Supreme Court. Va.Code Ann. § 17–97. Whichever route the inmate chooses to follow, it is clear that he ultimately must present his claims to the Virginia Supreme Court and receive a ruling from that court before a federal district court can consider them.

The court is of the opinion that inasmuch as petitioner's action on Claim 10 lies in habeas, it must be dismissed for failure to exhaust state remedies. Plaintiff offers no evidence whatsoever that he has presented his claim to any state court, much less presented it to the Virginia Supreme Court as required for exhaustion. *Id.* As it is clear that Claim 10 cannot yet be heard by this court under § 2254, this claim shall be dismissed without prejudice, pursuant to Rule 4.

■ Plaintiff also requests monetary damages in this case. However, under a recent opinion and holding by the United States Supreme Court, plaintiff's claims for damages for a wrongful conviction caused by defendants' allegedly unconstitutional conduct will not accrue until the conviction which resulted from the allegedly wrongful conduct has been held invalid by a court of law. *Heck v. Humphrey,* 512 U.S. 477, ——, 114 S.Ct. 2364, 2374, 129 L.Ed.2d 383 (1994). Under *Heck,*

> in order to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order … or called into question by a federal court's issuance of a writ of habeas corpus…. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at ——, 114 S.Ct. at 2372. Inasmuch as plaintiff offers no evidence that a court or other appropriate authority has determined that his disciplinary conviction and sentence were wrongfully entered against him, any § 1983 cause of action for damages which he may have against individual(s) responsible

for the deprivation has not yet accrued. Claim 10 must, therefore, be dismissed without prejudice.

■ Finally, in Claim 1, plaintiff alleges that the proceedings surrounding his disciplinary charge and conviction stemmed from a conspiracy among VDOC/ACC officials to retaliate against him for bringing a complaint against Officer Hilton for his racial remark on March 20, 1995. After review of the record, the court finds that plaintiff's allegations fail to state a claim of conspiracy or retaliation.

■ An essential element in any claim of conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. *Ballinger v. North Carolina Agricultural Extension Service,* 815 F.2d 1001 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Without such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagen v. First National Bank,* 639 F.2d 1073 (4th Cir.1981). The plaintiff must allege facts which show that the defendants shared a "unity of purpose or common design" to injure the plaintiff. *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County, Okl.,* 866 F.2d 1121 (9th Cir.1989); *Cole v. Gray,* 638 F.2d 804 (5th Cir.1981).

In this case, plaintiff alleges that all the defendants conspired to bring the charge and convict him of it. Nowhere, however, does Brown allege any facts showing that the defendants formed any type of agreement or acted in concert to injure him. The mere fact that each of these actors played a part in the events is not sufficient to show such a unity of purpose. Under the principles outlined above, Brown's claim of conspiracy must be dismissed.

■ Likewise, Brown's allegations fail to state any claim of retaliation. Retaliation

against an inmate for the exercise of a constitutional right states a § 1983 claim. *American Civ. Liberties Union v. Wicomico County*, 999 F.2d 780 (4th Cir.1993). In addition, the inmate must point to specific facts which tend to support his allegation of a retaliation motive behind the defendants' actions. *White v. White*, 886 F.2d 721 (4th Cir.1989). Bare assertions of retaliation do not establish a claim of constitutional dimensions. *Adams v. Rice*, 40 F.3d 72 (4th Cir.1994).

■■■ One, Brown does not allege any specific facts showing that he exercised a constitutional right for which anyone took retaliatory action. Inmates do not have a constitutionally protected right to participate in a grievance procedure. *Adams v. Rice*, 40 F.3d 72 (4th Cir.1994) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Moreover, because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' constitutional right of access to the courts. *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Two, Brown does not allege any specific facts demonstrating that Hilton's identification of him as a disturbance maker had any connection to a grievance Brown had filed. The mere fact that the two events occurred within ten days of each other is not enough to state a retaliation claim under § 1983. *Adams, supra.* Claim 1 must be dismissed.

In conclusion, as the court finds that Brown's allegations fail to state any claim cognizable under § 1983 or § 2254, defendants' motion to dismiss must be granted as to Claims 1 through 9 and Claim 10 must be dismissed without prejudice. An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and ac-companying order to plaintiff and to counsel of record for the defendants.