**Ricky Wayne BOBLETT, Plaintiff,**

**v.**

**Ron ANGELONE, et al., Defendants.**

**Civil Action No. 95–1009–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Oct. 16, 1996.

Ricky Wayne Boblett, Dillwyn, VA, pro se.

Pamela Anne Sargent, Office of Attorney General, Richmond, VA, for Ron Angelone, Dan T. Mahon, Lisa Edwards.

### Memorandum Opinion

KISER, Chief Judge.

Plaintiff Ricky Wayne Boblett, an inmate at Dillwyn Correctional Center ["DwCC"], has filed this *pro se* civil action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his complaint, plaintiff alleges that he has been involuntarily exposed to environmental tobacco smoke ["ETS"], that he is being charged a co-payment for each medical consultation regardless of his ability to pay and that he has been the subject of retaliation for taking advantage of the grievance procedure and filing civil actions. Plaintiff names Ron Angelone, Dan Mahon, Lisa Edwards, Major Perutelli, and Mr. Carr as defendants.[1] He seeks injunctive relief and monetary damages.

The defendants, through counsel, initially filed a motion to dismiss. By order dated January 22, 1996, I denied this motion to dismiss. Defendants have now filed a motion for summary judgment. The court notified the plaintiff of the defendants' motion as required by *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), and warned plaintiff that judgment might be granted for the defendants if plaintiff did not respond to the motion. Plaintiff has responded. Therefore, the defendants' motion for summary judgment is now ripe for disposition.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light

---

1. By order dated January 22, 1996, I dismissed all claims against defendants Larry Huffman, Ed Morris and Gene Johnson.

most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed facts for trial. Fed.R.Civ.P. 56(e). If the adverse party fails to show a genuine issue of fact, summary judgment, if appropriate, may be entered against the adverse party.

Unless otherwise noted, the following facts are undisputed. Upon arriving at DwCC in 1994, plaintiff received an assignment to dormitory 6B, which is designated as "non-smoking." He soon discovered that, notwithstanding the designation of dormitory 6B, there were a number of inmates housed in the same dormitory who smoked within the confines of the dormitory. As time elapsed, plaintiff learned that prison officials do not require inmates requesting assignment to 6B to swear to total abstinence from smoking and that prison officials do not conduct background screens to see if a particular inmate had a history of smoking before assigning the inmate to 6B. Prison officials merely assign inmates to 6B upon the inmates' expression of a desire to be housed in that dormitory. Plaintiff concedes that a number of inmates have received disciplinary charges for possession of tobacco products in 6B, but he complains that these inmates remained in 6B for weeks or even months before being transferred to another dormitory. Finally, plaintiff broadly hints that correctional officers patrolling dormitory 6B occasionally allow inmates to smoke in the dormitories.

It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In *Helling,* the Supreme Court held that, in order to prove a cause of action for exposure to ETS in violation of a prisoner's Eighth Amendment rights, the prisoner must prove that the defendants have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health. *Id.*

Applying these principles here, I conclude that plaintiff's allegations regarding his exposure to ETS fail to establish a violation of the Eighth Amendment. Plaintiff's own pleadings, and attachments thereto, reveal that prison officials at DwCC have established a non-smoking dormitory, that officials discipline inmates who violate the rules of this dormitory by possessing tobacco products and that inmates who receive such infractions receive assignments to other dormitories. Although plaintiff complains that the rules of the non-smoking dormitory are less rigidly enforced than he would like and that prison officials do not perform an extensive background check of the inmates who request assignment to the non-smoking dormitory, I find that these alleged deficiencies in the operation of the non-smoking dorm fall far short of establishing deliberate indifference to any serious risk posed to plaintiff by his exposure to ETS. *See Helling, supra.* Even assuming that plaintiff's health has suffered deleterious effects as a result of the tobacco smoke of which he complains, I am of the opinion that the steps taken by prison officials to limit plaintiff's exposure to ETS satisfy their obligation under the Eighth Amendment. While it may be true that prison officials could take additional measures to ameliorate the environmental conditions to which plaintiff is exposed, the Constitution does not require prison officials to provide ideal conditions for convicted prisoners. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct.

2392, 69 L.Ed.2d 59 (1981). Accordingly, I must grant defendants' motion for summary judgment as to this claim.

■ Plaintiff next alleges that the policy within the Virginia Department of Corrections whereby inmates are compelled to make a co-payment for each medical consultation is unconstitutional. I first note that, in order to state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege acts sufficient to evince a deliberate indifference to a serious medical condition. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Plaintiff, however, does not allege that any of the defendants were deliberately indifferent to his medical needs. Instead, he merely complains that the medical care provided him was not free of charge. Inasmuch as plaintiff had no constitutional right to free medical care prior to his incarceration, I see no reason why his incarceration should confer upon him such a constitutional right. A prisoner merely has a right to receive needed medical treatment; the allocation of expenses is a matter of state law. *See Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

■ Plaintiff also contends, however, that, as a result of the policy regarding medical co-payments, he is often forced to choose between necessary toiletries and adequate medical care. Insofar as plaintiff intends to argue that this ancillary consequence of the medical co-payment policy is a constitutional violation, he has alleged no facts suggesting either a serious or significant injury stemming from the limited availability of toiletries, *see Strickler v. Waters,* 989 F.2d 1375, 1380–1381 (4th Cir.1993) or a substantial risk of future harm. *See Helling, supra.* Accordingly, I shall grant defendants' motion for summary judgment as to plaintiff's claim that the medical co-payment plan violates his constitutional rights.

■ Finally, plaintiff alleges that he was subjected to retaliation for utilizing the grievance procedure and for filing civil actions in this court. Retaliation against an inmate for the exercise of a constitutional right, such as access to the courts, states a claim. *Hud-*

*speth v. Figgins,* 584 F.2d 1345 (4th Cir. 1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *Russell v. Oliver,* 552 F.2d 115 (4th Cir.1977). However, the inmate must allege sufficient facts to indicate that the alleged retaliation of which he complains resulted in some adversity to him sufficient to warrant concern about a chilling effect on the exercise of his right to access the courts. *American Civ. Liberties Union v. Wicomico County,* 999 F.2d 780 (4th Cir.1993). Moreover, the inmate must point to specific facts which tend to support his allegation of retaliation. *White v. White,* 886 F.2d 721 (4th Cir.1989). Bare assertions of retaliation do not establish a claim of constitutional dimensions. *Adams v. Rice,* 40 F.3d 72 (4th Cir.1994).

■ In the present case, plaintiff contends merely that Correctional Officer ["C/O"] Carr referred to him as a "snitch" and terminated him from employment for filing grievances and complaining. In a grievance addressing the incident, a copy of which plaintiff has submitted to the court, plaintiff also attributes a retaliatory motive to C/O Carr. In the grievance, however, plaintiff suggests that C/O Carr's actions stemmed simply from anger about plaintiff's grievances regarding Carr's "incompetence, and lack of knowledge and skill in his position." Nonetheless, in the present complaint, as well as several subsequent pleadings, plaintiff now intimates that C/O Carr was also motivated by retaliation for a civil action filed in this court regarding the adequacy of recreation at DwCC. Plaintiff also broadly asserts that he has received other unfavorable treatment in retaliation for his utilizing the grievance procedure and filing civil actions.

■ I first note that plaintiff's broad assertions regarding the treatment afforded him at DwCC since he began voicing his complaints by way of the grievance procedure and this court clearly fail to establish constitutionally proscribed retaliation under *Adams, supra.* Moreover, I find that his allegations regarding the conduct of C/O Carr also fall short of demonstrating a constitutional violation. First, his bare suggestion that C/O Carr's actions came in response

to a civil action does not satisfy the causal nexus required by *Adams* and *White, supra.* Second, although plaintiff's allegations may suffice to show that C/O Carr may have been motivated by retaliation for plaintiff's utilization of the grievance procedure, a state grievance procedure does not confer any substantive right upon prison inmates. *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988); *Adams, supra.* I thus find that retaliation for lodging complaints via such a grievance procedure does not state a claim under *Hudspeth, supra,* which requires that the retaliation come in response to the exercise of a fundamental right.

▆ Plaintiff also maintains, however, that C/O Carr infringed upon his right to free speech by retaliating against him for filing grievances. I disagree. Even assuming *Hudspeth* contemplates such a broad protection of an inmate's constitutional rights, I am of the opinion that a supervisor in a prison context does not abuse his discretion when he terminates an inmate who disrupts the supervisory relationship by filing harshly worded grievances. *Altizer v. Paderick,* 569 F.2d 812 (4th Cir.), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1882, 56 L.Ed.2d 391 (1978) (prison work assignments are within the discretion of prison officials); *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (the principle that inmates retain at least some constitutional rights must be weighed against the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration). Accordingly, I shall also grant defendants' motion for summary judgment as to plaintiff's claims of retaliation.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of the Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) or 4(a)(6).

The clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

*Order*

In accordance with the written Memorandum Opinion entered this day, it is hereby ADJUDGED and ORDERED that the defendants' motion be and hereby is GRANTED. This case will be stricken from the active docket of the court.

The clerk of the Court is directed to send certified copies of this Order to plaintiff and to counsel of record for the defendants.