*547 TRAXLER, Circuit Judge,
dissenting:
Relying on decisions from other circuits, the majority concludes that a prisoner’s right to be free from retaliation for filing a grievance was clearly established in 2010, when the actions giving rise to this lawsuit took place. Even assuming that that right may have been clearly established in other circuits, the case law from this circuit in 2010 could reasonably be understood as foreclosing that claim. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994). Because the controlling law in this circuit did not put the prison officials on notice that their conduct violated Booker’s constitutional rights, I believe the prison officials are entitled to qualified immunity. Accordingly, I respectfully dissent.
I.
Qualified immunity works to “avoid excessive disruption of government,” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), by “protecting] government officials performing discretionary functions from civil damage suits insofar as the officials’ conduct does not violate clearly established rights of which a reasonable person would have known,” Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998) (internal quotation marks and alteration omitted). “To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have- placed the statutory or constitutional question beyond debate.” Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks, citations and alteration omitted).
■ As a general rule, we look only to “the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose” when determining whether the defendant is entitled to qualified immunity. Yates v. Terry, 817 F.3d 877, 887 (4th Cir. 2016) (internal quotation marks omitted). If the case law of this court has addressed the relevant constitutional question, contrary rulings from other circuits are not relevant to the qualified-immunity inquiry. See Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (“If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.” (internal quotation marks and alteration omitted)). In the absence of controlling authority from either the Supreme Court, this court, or the highest state court, however, the existence of “a consensus of cases of persuasive authority” from other jurisdictions can be enough to foreclose a claim of qualified immunity. Ashcroft v. al-Kidd, 563 U.S. 731, 746, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted); Owens ex rel. Owens v. Lott, 372 F.3d 267, 279-80 (4th Cir. 2004).
II.
In the majority’s view, there was no controlling authority from this' circuit in 2010 addressing whether retaliation against an inmate for filing a grievance violates the inmate’s rights under the First Amendment. The majority therefore looks to case law from other circuits, finds a consensus, and holds that an inmate’s right to be free from retaliation for participating in the grievance system was clearly established.
I do not disagree that the weight of authority outside this circuit holds that the First Amendment is violated when prison officials retaliate against an inmate for filing a grievance under an established grievance system. Where I disagree with the majority is in its conclusion that case law from this circuit was silent on the relevant *548 First Amendment question. In my view, this court’s decision in Adams v. Rice could reasonably be understood as holding that an inmate’s use of a prison grievance system does not implicate the First Amendment and that grievance-based retaliation against the inmate likewise does not implicate the First Amendment. Because Adams can reasonably be understood to permit the actions of the prison officials at issue in this case, the majority erred by looking outside the circuit to conclude otherwise. See Edwards, 178 F.3d at 251.
A.
In Adams, a North Carolina inmate requested a transfer to protective custody after he was threatened by other inmates. State prison officials approved that request and directed that the inmate be transferred to the protective custody facility at a different prison. The inmate was never transferred, however, but was instead held in segregation for nine months. He was released from segregation and transferred to another prison after he withdrew his request for protective custody. See Adams, 40 F.3d at 73.
Proceeding informa pauperis under the version of 28 U.S.C. § 1915 then in effect, the inmate thereafter filed a lawsuit alleging that prison officials, in retaliation for his protective-custody request, had refused to transfer him to the protective-custody facility, “denied him minimum custody status, failed to schedule a parole eligibility date and hearing, and barred his access to the grievance process.” Adams, 40 F.3d at 74. The district court concluded that the inmate’s claim lacked an arguable basis in law or in fact and therefore dismissed the inmate’s claims as frivolous. See Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (“[A] complaint ... is frivolous where it lacks an arguable basis either in law or in fact.”).
The inmate appealed, contending that his complaint at least arguably stated claims of retaliation for the exercise of constitutionally protected rights. Because the Eighth Amendment protects inmates “from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm,” Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987), the inmate contended that his reporting of the threats against him and request for protective custody were at least arguably protected by the Eighth Amendment:
Given that prisoners’ right to be protected hinges to a large extent on whether the risks are known by the prison officials to exist, it is arguable, that prisoners must perforce have a right to be free from retaliation in reporting such risks to those same officials. Freedom to report such incidents would appear to be an essential ingredient to the exercise of the recognized right to be free from harms prison officials know about and are in a position to prevent.
Adams v. Rice, Brief of Appellant, 1994 WL 16014459, at *17.
This court rejected the inmate’s arguments. We first agreed with the district court that the inmate’s claims were factually frivolous, as there were no allegations in the complaint asserting that the single-cell housing the inmate received was in any way different from the protective custody he requested. See Adams, 40 F.3d at 75.
We likewise agreed with the district court’s determination that the complaint was legally frivolous. As we explained, “claims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitu *549 tion. That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.” Id. Applying that standard, we rejected the inmate’s claim that he exercised an Eighth Amendment right when he requested protective custody:
Appellant’s assertion of a “right to inform” states only a claim of entitlement to a particular grievance procedure because he seeks, in essence, a means of bringing complaints regarding his incarceration to the attention of prison officials. As other circuits have recognized, there is no constitutional right to participate in grievance proceedings.
Id. Addressing the specific instances of retaliation by prison officials alleged by the inmate, we explained that the inmate’s claims were doomed by the absence of an underlying constitutional right. See id. As is most relevant to this case, we explained that the inmate’s claim that prison officials prevented him from accessing the prison grievance system was legally frivolous because “the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.” Id.
B.
The majority reads Adams as holding that “inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example.” Majority Op. at 541. According to the majority,
Adams is entirely silent on the issue in this case — whether an inmate’s First Amendment right is violated when he is retaliated against for submitting a grievance pursuant to an existing grievance procedure. That a prison is not required under the Constitution to provide access to a grievance process does not mean that prison officials who retaliate against inmates for filing grievances do not violate the Constitution.
Id. Because Adams does not “explicitly address” the constitutional right being pressed in this case, id. at 542, the majority dismisses Adams entirely and turns to cases outside this circuit to find the right clearly established.
I believe the majority interprets Adams far too narrowly. Adams makes two separate holdings addressing prison grievance systems. First, Adams holds that an inmate cannot demand a grievance system structured to address whatever complaints he might want to raise. See Adams, 40 F.3d at 75 (rejecting inmate’s claim of entitlement to “a means of bringing complaints regarding his incarceration to the attention of prison officials”); id. (“[T]he Constitution creates no entitlement to grievance procedures.... ”). Second, Adams holds that inmates have no constitutional right to participate in a prison’s existing grievance system. See id. (“[Tjhere is no constitutional right to participate in grievance proceedings.”); id. (“[T]he Constitution creates no entitlement to ... access to any [grievance] procedure voluntarily established by a state.”). An inmate participates in a grievance system, of course, by filing a grievance.
When discussing Adams, the majority acknowledges the second holding only indirectly, by referring to an unpublished opinion that “properly applied Adams” to reject an inmate’s constitutional claim based on refusal to supply grievance forms. Majority Op. at 542. The majority, however, never grapples with the implications of Adams’ second holding except to suggest, indirectly, that while there may be no First Amendment right to file a grievance, if a grievance is in *550 fact filed, retaliation based on the grievance violates the First Amendment. See id. (discussing unpublished opinion that “misconstrued Adams to preclude an inmate from bringing a First Amendment claim alleging retaliation in response to his verbal complaints to prison officials.”). I do not believe that Adams can be distinguished in this manner.
As we explained in Adams, retaliation claims are actionable under § 1983 only if “the complaint implicates some right that exists under the Constitution. That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.” Adams, 40 F.3d at 75 (emphasis added). If an inmate has no constitutional right to file a grievance, as Adams held, then the inmate exercises no constitutional right by filing a grievance. And if filing a grievance implicates no constitutional right, then retaliation against the inmate because of the grievance does not violate the Constitution. See id. (“A claim of retaliation that fails to implicate any constitutional right lacks even an arguable basis in law.” (internal quotation marks omitted)). I simply see no basis for concluding, as the majority apparently does, that the act of filing a grievance — an act that is not constitutionally protected — somehow imbues the filing with constitutional protections.
Accordingly, it seems to me that this court’s decision in Adams affirmatively closes the door to the retaliation claim being asserted here. While there may be no single sentence in Adams that explicitly states that retaliation based on an inmate’s filing of a grievance will not support a constitutional claim under § 1983, the qualified-immunity inquiry does not require that level of specificity. See, e.g., Odom v. S.C. Dep’t of Corr., 349 F.3d 765, 773 (4th Cir. 2003) (explaining that the qualified-immunity analysis “must take into consideration not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked” (internal quotation marks omitted)). For the reasons outlined above, the conclusion that the retaliation alleged in this case is not sufficient to support a claim of retaliation under § 1983 follows inexorably from Adams’ clear and explicit holding that inmates have “no constitutional right to participate in grievance proceedings.” Adams, 40 F.3d at 75.
Even if it were somehow possible to draw the majority’s fine, lawyerly line between this case and Adams, it still would not be appropriate to deny qualified immunity. The qualified-immunity inquiry focuses on notice — whether the existing precedent gives the officials “fair notice that they are acting unconstitutionally.” Mullenix v. Luna, — U.S. -, 136 S.Ct. 305, 314, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). Thus, the question is not whether this court can come up with a plausible way of distinguishing Adams from the facts of the case at bar; the question is whether, in light of Adams, a prison official could “reasonably believe[ ] that his or her conduct complies with the law.” Pearson v. Callahan, 555 U.S. 223, 244, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
For the reasons outlined above, I believe that a reasonable prison official could read Adams as permitting the actions that were taken in this case. Indeed, the reasonableness of such a reading is confirmed by the fact that this court has applied Adams in that very way. See Daye v. Rubenstein, 417 Fed.Appx. 317, 319 (4th Cir. 2011) (per curiam) (applying Adams to reject inmate’s claim that prison officials violated his First Amendment rights by retaliating *551 against him for filing a verbal grievance).[1] While the majority now says that Daye “misconstrued” Adams, Majority Op. at 542, the question is not whether that reading of Adams ultimately proves to be wrong, but whether that reading of Adams is reasonable:
In interpreting qualified immunity ..., we must appreciate the fact that the direction of the law may be difficult to ascertain. Thus, although public officials may be charged with knowledge of constitutional developments, they are not required to predict the future course of constitutional law.... The requirement, after all, is that the law be clearly established, not simply possibly established or even probably established. Since qualified immunity is appropriate if reasonable officers could disagree on the relevant issue, it surely must be appropriate when reasonable jurists can do so.
Swanson v. Powers, 937 F.2d 965, 968 (4th Cir. 1991) (emphasis added; citation and internal alteration omitted); see Saucier v. Katz, 538 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (“The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. ... If the officer’s mistake as to what the law requires is reasonable, ... the officer is entitled to the immunity defense.” (emphasis added)), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
In my view, Adams directly, though not explicitly, forecloses Booker’s retaliation claim. But even if the distinction between this case and Adams that the majority apparently embraces were viable, a reasonable prison official could still conclude that the actions alleged in this case were permissible under this court’s decision in Adams. See Reichle, 132 S.Ct. at 2093 (qualified immunity should be granted unless the unlawfulness of the challenged action would be apparent to “every reasonable official.” (internal quotation marks omitted)). I therefore believe that the defendants are entitled to qualified immunity-
C.
I recognize, of course, that other circuits considering the issue have concluded that prison officials violate the First Amendment if they retaliate against an inmate for filing a grievance. Regardless of how compelling the majority may-find the analysis of those cases, they simply are not relevant to our qualified-immunity inquiry.
As this court has frequently explained, “[a] decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court.” United States v. Collins, 415 F.3d 304, 311 (4th Cir. 2005) (internal quotation marks omitted). Because Adams is binding, controlling authority that rejects Booker’s claim, the majority errs by dismissing Adams and relying on cases *552 outside this circuit to deny qualified immunity. See Owens, 372 F.3d at 280 (explaining that when performing the qualified-immunity analysis, courts may look to case law from other circuits only if there is no “controlling authority”); Edwards, 178 F.3d at 251 (“If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.” (internal quotation marks and alteration omitted)).
If the majority believes Adams was wrongly decided,[2] the proper way to correct the error is through en banc proceedings. The majority’s chosen path of artificially narrowing the reach of Adams’ holdings and then dismissing the case as irrelevant because it is not “directly on-point,” Majority Op. at 543, is disingenuous and inconsistent with our approach to resolving questions of qualified immunity and with our obligation to follow our own precedent.
III.
In Adams, this court held that “there is no constitutional right to participate in grievance proceedings.” 40 F.3d at 75 (emphasis added). Because inmates participate in grievance proceedings by filing a grievance, our decision in Adams must be understood as holding that inmates have no constitutional right to file a grievance. The filing of a grievance therefore implicates no constitutional right of the inmate and cannot support a retaliation claim against prison officials. See id. (“[Cjlaims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution. That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.” (emphasis added)).
Adams is binding authority that directly rejects the constitutional right asserted in this case. The majority errs by ignoring Adams and relying instead on out-of-circuit cases that are inconsistent with our holding in Adams in order to declare that an inmate’s right to be free from retaliation for filing a grievance was clearly established.
*553 Accordingly, for the foregoing reasons, I believe that the defendants are entitled to qualified immunity, and I therefore respectfully dissent from the majority’s contrary conclusion.

. The panel of judges deciding Daye included Judge Wilkinson, who wrote the opinion in Adams. That the author of Adams agreed with the analysis in Daye provides an additional indication of the reasonableness of its analysis.
Although unpublished opinions do not clearly establish constitutional rights and thus cannot be relied upon to impose liability on a government official, see Hogan v. Carter, 85 F.3d 1113, 1118 (4th Cir. 1996) (en banc), I do not believe Hogan precludes consideration of unpublished opinions when declining to impose liability, see id. ("We could not allow liability to be imposed upon public officials based upon unpublished opinions that we ourselves have determined will be binding only upon the parties immediately before the court.”).

. The majority grounds the right at issue in this case in the First Amendment's Petition Clause, and the majority seems to suggest that Adams’ determination that inmates have no constitutional right to participate in grievance proceedings is wrong because exhaustion of remedies is generally required before a prisoner can file a civil action challenging his conditions of confinement. See Majority Op. at 543.1 disagree.
Adams was decided in 1994, before the PLRA made exhaustion of "available” administrative remedies a mandatory prerequisite for all prison-condition lawsuits. 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84-85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (explaining evolution of exhaustion requirements). Nonetheless, as the Eighth Circuit explained in Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) (per curiam)—a case we relied on in Adams — "the prisoner's right to petition the government for redress is the right of access to the courts.” Id. at 729 (emphasis added). If prison officials prevented an inmate from pursuing a grievance through an existing grievance system, then the administrative remedies were not "available” to the inmate, and the PLRA would not bar the inmate from pursuing his claim in court. See, e.g., Kervin v. Barnes, 787 F.3d 833, 835 (7th Cir. 2015) (explaining that if a state creates a grievance system "yet prevents a prisoner from utilizing it he will be excused from having to exhaust the grievance process as a prerequisite to suing in federal court”); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a)....” (internal quotation marks and alteration omitted)). Adams' conclusion that there is no constitutional right to file a grievance, even when considered in light of the PLRA's mandatory exhaustion requirement, does not restrict an inmate's rights under the Petition Clause.