**Francis Hunter PRESSLY, Appellant,**

v.

**Terrell Don HUTTO, Director; Thomas J. Towberman, Regional Administrator; N.D. Hall, Regional Ombudsman; W.J. Townley, Superintendent, Unit # 23; Ms. Tucker, Nurse, Unit # 23; Sgt. Smoot, Officer in Charge, Unit # 23; Sgt. Ford, Officer in Charge, Unit # 23; Sgt. R.R. Overby, Officer in Charge, Unit # 23; Officer Griffith; Officer Poole; Officer Nichols; Officer Cole, Appellees.**

No. 82–6181.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1987.

Decided April 28, 1987.

---

George Rutherglen, Supervising Atty., University of Virginia School of Law; Elizabeth Finn Johnson, Third-Year Student, University of Virginia School of Law, for appellant.

Nelson H.C. Fisher, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., of Va.; Mark R. Davis, Asst. Atty. Gen., on brief), for appellees.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Francis Pressly, a convicted Virginia inmate at the time this action was filed, appeals the district court's grant of summary judgment for defendants in his 42 U.S.C. § 1983 action against employees of the Department of Corrections. We affirm in part, vacate in part, and remand.

Although Pressly raised several claims, all of which were denied, he appeals only the denial of his claim against Sergeant R.R. Overby. The relevant forecast of evidence, as developed on the summary judgment record, was as follows.

At approximately 7:30 p.m. on June 22, 1981, a disturbance erupted in the Southside Dormitory of Halifax County Correctional Unit # 23 involving Pressly and three other inmates, Russell, Powell, and Tobias. Sergeant R.R. Overby, the officer in charge that evening, went to the dormitory and found Pressly and Powell engaged in an argument. Because Pressly had sustained an injury to his eye, he was taken to the emergency room of a local hospital where he was treated and released. Sgt. Overby testified that after Pressly returned from the hospital he questioned all four inmates about the incident and received four different accounts. Pressly maintained that Powell, Tobias, and Russell had assaulted him because Powell thought Pressly had made a disparaging remark about Powell. Russell claimed to know nothing about the incident. Powell stated that Pressly had swung at him and missed. According to Powell, when Powell then grabbed Pressly's head, the two fell to a bed causing Pressly to hurt his eye. Tobias stated that Pressly and Powell were fighting but that Powell made no effort to defend himself. No corrections officers observed the incident.

Sgt. Overby asserted that he then asked each inmate whether he felt safe returning to the dormitory and that each indicated that he felt safe and did not want to be moved or placed in segregation. Pressly claimed to the contrary that he asked to be separated from Powell, Tobias, and Russell. In any event, all four were returned to the same dormitory.

At about 11:00 p.m. that same night, Sgt. Overby was told that an inmate had reported that there was going to be trouble in the southside dormitory. After making a personal check of the dormitory and finding everything quiet, Overby sent an extra officer to the dormitory in case trouble developed. This officer was removed at about 11:30 p.m.

Almost four hours later, at about 3:15 a.m., inmate Tobias assaulted Pressly while Pressly was asleep, striking him about the head with a large, metal padlock. Sgt. Overby was summoned to the dormitory. He confiscated the padlock from Tobias and obtained an admission from Tobias that he had struck Pressly with the lock. Pressly was again taken to the emergency room where he received sutures and treatment for a concussion.

After returning from the hospital, Pressly signed a statement that he would feel safe returning to the dormitory if "the perpetrators of the incident [were] moved to another dormitory." Tobias was placed in pre-hearing detention and Pressly was returned to the dormitory. Pressly asserted that since the assault he has suffered headaches and a loss of hearing in his left ear.

The district court granted summary judgment as to this claim on two grounds. First, it erroneously believed that Pressly had signed a statement refusing segregation after the first incident. The record shows, however, that Pressly signed a statement only after the second incident and that this statement indicated his willingness to return to the dormitory only if "the perpetrators" were removed. The record reflects a flat conflict in the testimony of Pressly and Sgt. Overby as to whether Pressly stated that he felt safe returning to the dormitory after the first incident.

The second basis for the district court's judgment was its assumption that Pressly's complaint at best stated a claim for simple negligence, which the court ruled would not be sufficient to support finding a constitutional violation actionable under § 1983.

Whether treated as a claim of deprivation of liberty without due process under the fourteenth amendment, or as a claim of eighth amendment violation, Pressly's claim was properly denied if the evidence raised only an issue of mere negligence, as the district court concluded. *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (mere negligent failure to protect inmate does not "deprive" of liberty, hence violate fourteenth amendment); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("obduracy and wantonness, not inadvertence ... characterize the conduct prohibited by [the eighth amendment]").

As indicated, however, the district court proceeded on a basic misapprehension as to the critical evidence. The record discloses a flat conflict of testimony between Pressly and Sgt. Overby on the dispositive factual issue. If Pressly's testimony were believed, Sgt. Overby could be found deliberately to have failed to protect him against a real and imminent risk of harm at the hands of fellow inmates, which risk was specifically known to Overby. If Sgt. Overby's version is believed, any risk involved was either insignificant or unknown to him, or both, so that his failure to protect was at most mere negligence.

Constitutional claims of convicted prison inmates that they have suffered physical harm at the hands either of prison officials or of fellow-inmates against whom prison officials failed to provide protection, are most appropriately assessed under the eighth amendment where both that source and the fourteenth amendment are invoked. The two sources provide essentially congruent protection, but the eighth amendment source is the primary one in this context. *Whitley*, 106 S.Ct. at 1088.

■ The eighth amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm, *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979), just as it protects against harm resulting from deliberate indifference of prison officials to serious medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). *Cf. Whitley*, 106 U.S. at 1084–85 (contrasting "deliberate indifference" standard with more stringent "wantonness" standard applicable where physical force directly applied by prison officials to maintain security or discipline).

■ Here, as indicated, there is a disputed issue of fact as to the exact circumstances under which Pressly suffered harm at the hands of fellow inmates. That issue is a "genuine" one as to a "material" fact. If Pressly's version were accepted by a fact-finder, it could support a legal determination that his harm resulted from the "deliberate indifference" of the defendant Overby. Summary judgment was therefore not appropriate as to this claim, and

the case must be remanded for further proceedings.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.