PHILLIPS, Senior Circuit Judge,
dissenting:
I differ fundamentally with the en banc majority’s apparent understanding of what Johnson v. Jones, — U.S. —, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), has instructed us on the scope of our jurisdiction to review interlocutory orders denying motions by § 1983 defendants for summary judgment on qualified immunity grounds. On my different understanding and application of the jurisdictional principles of that decision, I would hold that because this appeal seeks only to challenge a fact-related, evidence-sufficiency determination it should be dismissed. Alternatively, if it be considered that the appeal seeks also to challenge a purely legal determination properly presented for our review— a premise I believe not warranted—I would affirm the ruling.
I
To get at the difference in our understandings of Johnson, I start by laying out my understanding of its holding and of its more important implications for this case.
A.
Johnson was taken for review by the Supreme Court specifically to clarify that which Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), had held was immediately reviewable by interlocutory appeal from district court orders denying summary judgment motions on qualified immunity grounds. Clarification was required because some circuits—including this one— had misunderstood Mitchell on this critical point. See Johnson, — U.S. at —, 115 S.Ct. at 2154 (citing, inter alia, Turner v. Dammon, 848 F.2d 440, 444 (4th Cir.1988), among cases reflecting erroneous view of jurisdiction).
The basic point of clarification is clear. The only immediately reviewable determination embodied in (or constituting the sole basis for) such an order is the “purely legal one,” see Johnson, — U.S. at —, 115 S.Ct. at 2156, that if the facts were as the district court assumed them to be for summary judgment purposes, defendant’s conduct would have violated a then clearly established constitutional (or statutory) right of plaintiff of which a reasonable official in defendant’s position would have known. Id. — U.S. at —, 115 S.Ct. at 2155-2156. Not immediately reviewable are “fact-related,” id. at —, 115 S.Ct. at 2153, determinations embodied in (or constituting the sole basis for) the denial, that genuine issues of material fact respecting the qualified immunity defense prevent the grant of summary judgment. Id. at —, 115 S.Ct. at 2156-2158. The reasons for the reviewable/not-reviewable distinction are found in the collateral order doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), upon which Mitchell is based, principally in Cohen’s separability requirement: the “purely legal” is *543 sue is separable from the merits of the § 1983 claim; the “fact-related” issue inevitably will be intertwined with the merits to some extent. Id. at —, 115 S.Ct. at 2156 (legal issue); 2157 (“evidence-insufficiency” issue).[1]
B.
How do these two different types of determination emerge in the litigation process to provide the basis for this critical jurisdictional distinction? The answer can best be found by keeping in mind the substantive elements of the qualified immunity affirmative defense and tracing out the adversarial processes of party presentation and default by which those elements may be put in issue and withheld or removed from issue at the trial and appellate levels. Recall first the substantive anatomy of the qualified immunity defense. It is an affirmative defense—in the same confession-and-avoidance mode as release, accord and satisfaction and the like— rather than a simple denial of one or more of the essential elements of the' § 1988 claim. It invokes the immunity principle that even if the § 1983 claim has merit (which ordinarily will be denied) the defendant is not liable and may not be put to trial because the right allegedly violated was not one so clearly established at the time of the conduct charged to the defendant that a reasonable official in his position would have known that the conduct charged would violate that right. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). There are both legal and factual elements in this defense-principle: purely legal issues respecting the state of the law at a particular time and factual issues respecting the circumstances under which the charged conduct occurred, such as whether the defendant was involved at all or in the critical way charged; whether there were exigencies affecting the objective reasonableness of the conduct charged, etc. See Anderson, 483 U.S. at 641, 107 S.Ct. at 3039-40 (actual information possessed); Malley v. Briggs, 475 U.S. 335, 350, 106 S.Ct. 1092, 1100-01, 89 L.Ed.2d 271 (1986) (Powell, J., concurring and dissenting) (exigencies of time and circumstance).
A defendant invoking the defense in the district court by motion for summary judgment may therefore base his motion on either purely legal, or factual, or both grounds. See Johnson, — U.S. at —, 115 S.Ct. at 2158 (pointing out that motion’s grounds serve to identify basis for its denial). His motion may, for example, be rested solely on some variant of the following factual positions: (1) assuming (or conceding) that the conduct charged to me would constitute a violation of clearly-established constitutional right, etc., I didn’t do it (the Johnson defense); or (2) assuming (or conceding) that the conduct charged to me did violate the right alleged, the factual circumstances were such that I acted under reasonable misapprehension that it would not do so. See Anderson, 483 U.S. at 646-47 n. 6, 107 S.Ct. at 3042 n. 6. Both of these positions present only factual grounds for the immunity de *544 fense; no purely legal issue has been raised in the district court, hence none is a potential issue for appellate review. Whether summary judgment should be granted depends entirely upon whether there are genuine issues of fact respecting the ground of defense (“didn’t do it,” or “reasonably mistaken under the circumstances”), and a decision denying summary judgment necessarily rests only on a determination that there are such issues, i.e., that the non-movant’s forecast of opposing evidence is sufficient to hold the factual defense at issue. If the defendant then attempts to appeal such a denial order, the appeal should be dismissed, as necessarily seeking review only of the “fact-related” determination which is the order’s sole basis. This is the type of “simple” case, for jurisdictional purposes, represented for example by Johnson itself. See Johnson, at —, —, 115 S.Ct. at 2153-2154, 2158.
On the other hand, a defendant’s motion may be rested solely on the “purely legal” issue. It would, for example, if it took the position that (3) assuming (or conceding) that the conduct charged to me did occur as charged, it did not constitute the violation of a then clearly established constitutional right. See Mitchell, 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985) (only issue would then be whether “question was open at the time the officer acted”). This presents no “fact-related” issue, and a denial of summary judgment by the district court would necessarily rest only on a determination that as a matter of law the conduct assumed or conceded did constitute violation of a well-established right, etc. An appeal from this order thus lies for review of the “purely legal” determination which necessarily is the sole basis for the denial. This, too, is a “simple case” for making the jurisdictional distinction.
c.
But, as the Johnson Court recognized in responding to cogent arguments that making the required jurisdictional distinction frequently would be too conceptually difficult, or too subject to party manipulation, or too subject to uninformative district court records, see id. at-, 115 S.Ct. at 2158-2159, things can get much more complicated for jurisdictional purposes. This is most likely to occur where a defendant has rested his motion on both purely legal and fact-related grounds in the district court. For example, by contending in his motion both, or alternatively, that (4) assuming the conduct charged to me did occur as charged, it would not constitute violation of a clearly-established right, etc. (purely legal) and, in any event, it did not occur in that way, but while I was absent from the scene (fact-related). Whether or not cleanly reflected in the record, every denial of such a two-pronged motion must, as a conceptual matter, involve determinations both that the conduct as charged did violate a clearly established right, etc. and that genuine issues of material fact respecting the defendant’s asserted absence from the scene prevented granting summary judgment on that ground. And, because it necessarily involves, whether or not expressly stated, the purely legal determination, such an order, per Johnson, is “appealable” (reviewable) “to [that] extent.” Id. at —, 115 S.Ct. at 2156 (quoting Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817). Which means that it is not “appealable”- (reviewable) with respect to the fact-related, genuine issue determination, either as a matter of primary or, except perhaps in exceptional cases, pendent jurisdiction. See id. at —, 115 S.Ct. at 2159.[2]
*545 D.
Everything said to this point about the appealability (immediate reviewability) of qualified immunity denials under Johnson has assumed that the defendant will properly have invoked the court of appeal’s power to review that which Johnson says it may review. But Johnson does not purport (nor does any other Supreme Court decision of which I am aware) to alter for qualified immunity eases the normal rules of party presentation and default of issues potentially subject to appellate review. Therefore, notwithstanding the appealability under Mitchell and Johnson of any purely legal determination embodied in a qualified immunity/summary judgment denial, reviewa-bility of such an order in a particular case yet depends upon the defendant’s having properly raised it in the district court and preserved it for review under the relevant trial and appellate procedural default rules. E.g., Fed.R.Civ.P. 46 (contemporaneous objection rule); Fed.R.App.P. 28(a)(2), 28(b) (issues for review must be identified in brief).
E.
This all means that when it appears from the record that a defendant-appellant is seeking review of a determination that there are genuine issues of material fact respecting a factual ground of his qualified immunity defense (“didn’t do it”; “reasonably mistaken in doing it”) that require denial of his motion, the appellate court may not address to any extent the correctness of that determination. Not having jurisdiction to review it, the court may only dismiss the appeal if, as in Johnson, the genuine-issue determination is the sole basis for the denial, see Finelli v. Tabb, 67 F.3d 67 (4th Cir.1995) (so holding), or decline to review it when the denial order is based upon both a reviewable purely legal determination and the non-reviewable genuine-issue determination. See Johnson, — U.S. at —, 115 S.Ct. at 2159 (no jurisdiction to review an order “insofar as that order determines whether or not the pretrial record sets forth a ‘genuine’ issue of fact for trial”) (emphasis supplied).
Though, as the Johnson Court expressly noted, disallowing interlocutory review of erroneous genuine-issue determinations will sometimes deprive officials of the pre-trial and trial-avoidance benefits of qualified immunity to which they are entitled, the jurisdictional limitations on Cohen collateral order review power compel that result. See id. at —, 115 S.Ct. at 2158.
F.
Assuming, however, that a purely legal determination is properly presented for review, what exactly is reviewed? More specifically, does the court of appeals accept the district court’s identification of the factual predicate for that court’s legal determination and, accepting it,- review only the resulting “purely” legal determination? Or may the court of appeals review for error in the district court’s identification of the factual predicate that it assumed for summary judgment purposes? For example, suppose the district court expressly identifies as the facts it assumed for summary judgment purposes that the defendant, a prison guard, deliberately failed for twelve hours to notify an available prison doctor that the plaintiff-inmate had suffered a broken leg. May the court of appeals do more than consider whether, on that factual predicate, there would have been a violation of clearly established Eighth Amendment rights of which a reasonable official in defendant’s position would have known? Could it, for example, reject the factual predicate, hence the legal determination, on the basis that under summary judgment procedure rightly applied it was undisputed that notice was given within three minutes of actual knowledge?
Though the consequence may seem severe, Johnson’s answer is plain. Review is confined to the “purely” legal issue whether, accepting the district court’s factual predicate, a violation of clearly established law *546 would have occurred. This appears in various ways in the Court’s explanation of why review must be confined, in faithfulness to Cohen’s jurisdictional limitations and to a proper allocation of trial and appellate functions, to purely legal determinations rested upon assumed factual predicates.
First off, the Court emphasized the jurisdictional compulsion to confine review in this way. Interlocutory appeals of qualified immunity/summary judgment denials, said the Court, best serve the final judgment rule, “if they [are] limited to cases presenting neat abstract issues of law.” Id. at —, 115 S.Ct. at 2158 (quoting 15A Wright & Miller § 3914.10, at 664). As is evident, this legal issue can only be addressed as an “abstract” one if its resolution does not involve review by courts of appeals of the factual predicates upon which the district court made its determination. This is borne out in Johnson’s discussion of how courts of appeal are to identify the factual predicates for the district courts’ purely legal determinations when those courts “simply deny summary judgment without indicating their reasons for doing so.” Id. at —, 115 S.Ct. at 2159. Easily done, said the Johnson Court, when the district court has expressly “stated” the facts it has assumed in denying the motion. In that situation, said the Court, “the court of appeals can simply take, as given, the facts that the district court assumed,” and assume the same “set of facts” “when it answers the purely legal question about ‘clearly established’ law.” Id. And, where the district court has not performed the helpful task of stating the facts it has assumed so that this must be sought by the court of appeals in “a cumbersome review of the record,” the search still is only for “what facts the district court, in the light most favorable to the nonmoving party likely assumed,” id. (emphasis supplied), not for what it should have assumed.[3]
Can the Court actually have intended interlocutory review to be limited in this further way—that is, in addition to the genuine-issue limitation? The consequence will be an inability of courts of appeals to correct manifest district court error in identifying the facts properly to be assumed for summary judgment purposes, and resulting error in denying a defendant’s entitlement to qualified immunity in advance of trial. This is a serious consequence, but it is one no more inimical to the purposes of qualified immunity than is the clear inability of courts of appeals—under Johnson—even to address manifest district court error in making “evidence-sufficiency” determinations.[4] And, as the Johnson Court pointed out, the fact that that flat jurisdictional limitation will sometimes force to trial public officials who, under a correct application of qualified immunity doctrine should not be put to trial, simply must yield to “competing considerations” of “delay, comparative expertise of trial and appellate courts, and wise use of appellate resources.” Id. at —, 115 S.Ct. at 2158. In other words, occasional district court error in denying summary judgment either on the grounds that there are genuine issues of fact respecting a factual ground of qualified *547 immunity defense (“didn’t do it” or “reasonably mistaken”) or in identifying the factual predicate for a purely legal ground of defense (“facts assumed don’t constitute violation of well-established constitutional right”), must, in deference to countervailing considerations, simply be tolerated.
G.
In sum, I read Johnson as having confined interlocutory appellate review of district court orders denying motions for summary judgment on qualified immunity grounds to a narrow, “abstract” issue of “pure” law: whether “tak[ing] as given” the facts assumed (rightly or wrongly) by the district court, id. at —, 115 S.Ct. at 2159, those facts show a violation of clearly established law, etc. This means that interlocutory review is not available with respect either to (1) determinations by district courts that there are genuine issues of material fact respecting a factual ground for the defense which require the denial or (2) determinations by district courts of those facts that are to be assumed, for summary judgment purposes, in deciding whether they show a violation of clearly established right of which a reasonable official in defendant’s position would have known.
This involves a dramatic curtailment of the scope of interlocutory review' which was thought proper in this—and other—circuits before Johnson’s clarification of Mitchell. Our understanding, plainly revealed in our cases, was that “fact-related,” genuine issue determinations as well as purely legal determinations were reviewable on interlocutory appeals of right under Mitchell. See, e.g., Turner, 848 F.2d at 444 (4th Cir.1988) (jurisdiction assumed to conduct de novo record review of district court’s determination that genuine issues of fact respecting factual grounds of defense precluded grant of qualified immunity motion; district court affirmed); Gooden v. Howard County, 954 F.2d 960, 965-966 (4th Cir.1992) (en banc) (same; district court reversed).
The more limited scope of review mandated by Johnson necessarily will allow district court errors in these fact-related determinations to go undetected at the summary judgment stage and so will deprive some public official defendants of the trial avoidance benefits to which qualified immunity entitled them. This, however, is a risk of which the Johnson Court was expressly aware and which it thought nevertheless compelled by jurisdictional constraints on collateral order review and by considerations of prudent judicial administration. See Johnson, — U.S. at —, 115 S.Ct. at 2158.
To put those risks in perspective, two points should be noted. (1) The practical effect is not to abrogate but only to allocate to the district courts final responsibility for two fact-related determinations in pre-trial qualified immunity applications; errors in those determinations will—as in all matters—be the rare exception rather than a frequent occurrence in those courts'. (2) When occasional error does occur, its effect—of forcing unwarranted trial—is exhausted there; the error is not immunized and may yet be corrected at trial or on later appeal, with liability thereby avoided. In any event, as I understand Johnson, its fundamental point is that the game—of laborious interlocutory evidence review—is simply not worth the candle—of identifying and correcting the occasional district court error that will occur both in identifying genuine issues of fact respecting factual grounds of the defense and in identifying the factual predicates for denials of summary judgment on purely legal grounds.
II
On this understanding of Johnson and its implications for this case, I would dismiss this appeal on the basis that the appellants’ appeal only seeks review of the district court’s unappealable fact-related determination that there are genuine issues of material fact respecting “what happened,” hence of the objective reasonableness of their conduct.
Assuming, however, for purposes of this case that somehow—as the majority has concluded—the appeal properly presents for our review a district court determination of the purely legal issue—whether on the facts assumed a violation of clearly-established law, *548 etc., was shown—I would affirm that determination.
I take these in order.
A.
On any fair reading of the record in this case, the only determination by the district court that appellants have sought to “appeal” is the fact-related determination that there were genuine issues of material fact respecting “what happened,” hence whether what happened involved their violation of a clearly established right, so that summary judgment was inappropriate.
To demonstrate that, we should start with the appellants’ motion for summary judgment as made and supported in the district court. See Part I.B. ante. In that motion, which sought dismissal both on the merits and on qualified immunity grounds, the appellant-officers did not, as I read the record, actually contend that as a matter of law Winfield’s complaint did not allege a violation of constitutional right, nor, alternatively, that the right allegedly violated was not then clearly established. Instead, as shown in their motion papers, they effectively conceded that under such decisions of this court as Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987), the right asserted by Winfield of convicts to be “protected against physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm” was then well-settled in this circuit. J.A. 14, 72. Their qualified immunity defense was therefore not rested on the purely legal ground that assuming the conduct charged to them occurred, it would not have constituted a violation of that clearly established right. Instead, it was rested on the purely factual ground that “the facts do not give us such a case here;” that on the “actual” facts as asserted in their supporting affidavits, their conduct could not have constituted violation of the acknowledged right because it lacked the requisite deliberate indifference. See id. This is a factual defense essentially indistinguishable from the simple “weren’t there, didn’t do it” factual defense that was raised as the sole basis for the officers’ motion in Johnson,[5] See Part I.B. ante.
The district court’s opinion denying the two-pronged motion, though not as helpful for purposes of making the Johnson distinction as we might wish,[6] is plain enough for our purposes. The court’s memorandum opinion conflated its rulings on the merits and qualified immunity grounds of the motion. As to the merits defense, which was rested essentially on the same factual “no deliberate indifference” grounds as was the qualified immunity defense, the court expressly concluded that “there are genuine issues of material fact,” that “[ijndeed ... this case is peculiarly fact-specific and should proceed to trial on the merits.” J.A. 80.
Specifically addressing the qualified immunity defense, the court then opined that the constitutional right asserted in Winfield’s complaint and responsive affidavit was—as appellants had effectively conceded—well- *549 settled at the time of the assault.[7] J.A. 81. Having already determined, in ruling on the merits defense, that there were genuine issues of material fact respecting “what happened,” the court did not expressly reiterate that conclusion with respect to the qualified immunity defense. But it is manifest that the existence of genuine issues respecting “what happened,” hence whether the appellants’ conduct was as a matter of law objectively reasonable (not deliberately indifferent), was the basis for the court’s denial. For the court specifically identified as controverted facts it considered material to the defense Winfield’s assertions in affidavit that some of the appellant-officers were forewarned of the risk posed by Gibson to other inmates’ safety by their knowledge that he had a weapon and had been consuming alcohol. Assuming that were true, the court opined “the officers [were] bound to know that the safety of other inmates was at risk” and that their “permissive attitude ... would violate the inmates’ right to continued protection and security.” Without further elaboration on the factual issues, the court then denied the qualified immunity motion.
It seems clear that at this point in the record the district court had determined (rightly or wrongly) that there were genuine issues of material fact respecting “what happened” that required denial of the motion. It is less clear, but possible, that it had also made a “purely legal” determination—thinking the issue had been raised—that on the facts as it assumed them a violation of clearly established law of which reasonable persons in the officers positions would have known was shown. In any event, whatever the determinations actually made, the officers could not -under Johnson appeal the denial order insofar as it rested on a genuine-issue determination, but only insofar as it rested on any “purely legal” determination that was made. Furthermore, even if there was a purely legal determination that was appealable, it is not entitled to -review on this appeal—absent extraordinary circumstances—unless properly presented for our review.
To take the next step in the jurisdictional inquiry we must then determine from the record what issues the appellants have sought to “appeal.” How do we do this? The notice of appeal ordinarily will not tell us; it is required only to identify the “order, or part thereof’ from which appeal is taken, and not the legal rulings on which it is based. Fed.R.AppJP. 3(c). So, the notice of appeal here does not perform the required service. See J.A. 83. If the Federal Rules of Appellate Procedure are properly observed, the appellants’ brief should tell us, for the “issues” section of the appellant’s primary brief is required to include “[a] statement of the issues presented for review.” Fed.R.App.P. 28(a)(3). The brief in this case regrettably does not do so. With respect to the district court’s denial of the motion for summary judgment on qualified immunity grounds, the issue is stated in unhelpful general terms simply as “whether the officers are entitled to qualified immunity as to all of Winfield’s claims.” J.A. 8. We get the answer here with sufficient precision, however, in the argument section of the appellants’ brief. There, in the portion- devoted to their qualified immunity defense, it is plain that the officers do not challenge (as they did not in the district court) the district court’s observation (determination?) that the constitutional right alleged .was “clearly established” at the critical time, but only the court’s essential determination that there were genuine issues of material fact respecting the reasonableness of.the officers’ conduct. The entire burden of the appellants’ argument is that the evidence was insufficient to create a triable issue of material fact on this element of their defense and that on the undisputed evidence they had not violated Winfield’s right by their failure to intervene to protect *550 him. J.A. 20-26. Their argument on the point is summed up in the assertion that on the summary judgment record, there was “[n]o dispute regarding the reasonableness of ... these officers’ perceptions.” J.A. 21-22.
The district court, however, determined that there was such a dispute. And, because that fact-related determination is the only one sought to be appealed by appellants and as such is not appealable under Johnson, I would dismiss this appeal.[8]
B.
The majority, however, has concluded that the appeal properly seeks and properly presents for our review a purely legal determination that is appealable under Johnson. As indicated, I disagree with that, believing (1) that no such issue was actually raised for determination by the district court and (2) that if it was, the district court’s determination has not been properly presented for our review on this appeal.
Assuming, however, that such a determination was made and is properly before us, I would affirm it. The question presented, if the issue is before us, is whether the facts assumed by the district court show a violation of clearly established right of which reasonable officials in appellants’ position would have known.
The majority, extensively reviewing the summary judgment materials before the district court, concludes that no such violation was shown. But it is obvious that this conclusion is reached not on the basis of the facts “likely assumed” by the district court, but on the basis of facts the majority concludes should have been assumed by that court on a right application of summary judgment principles. Indeed, the majority says—in the course of directly responding in Part IV of its opinion to the opposing position of this dissent—that this is exactly what it has done. See ante at 534. And, it purports to find authority for doing so in what it perceives as the course “plainly envisioned” by the Johnson Court: that “on those infrequent occasions when a district court does not supply the factual basis for its decision, we would be required to undertake the type of de novo review that generally would be prohibited.” Id.
With all respect, this is not, as a simple matter of textual exegesis, what the Johnson Court indicated that it “envisioned.” Had it been what was intended, the Court surely would have said a very simple thing, such as: ‘When, however, the district court has failed (completely [?] or sufficiently [?]) to identify the predicate facts for its purely legal determination, then, as a matter of necessity, the court of appeals must make its own de novo determination, applying summary judgment standards, of the predicate facts properly to be assumed.” The Court said no such thing, nor can such a reading be implied from anything it did plainly say. Perhaps the majority—and the other courts which it says agree with its reading of Johnson on this point— believe that this is what the Court must have had in mind, or should have had in mind, given the difficulty of divining from a summary judgment record what another court “likely assumed.” But that of course is not our function in interpreting Supreme Court mandates. And, in any event, as I believe can be demonstrated, the process is not that difficult for courts already required on occasion to divine the likely holdings of highest state courts on matter of state law, or what “jurists of reason” likely would think about the “newness” of a constitutional rule, or whether four Justices of the Court likely would vote to grant a petition for certiorari, etc.
Turning to that process here, the proper question for us is what facts the district court “likely assumed” as that can be gleaned from *551 the admittedly unusual record search that Johnson recognized might be forced by the district court’s failure specifically to “state” them? How do we find facts “likely assumed” without simply doing what the majority has done here: simply impose on the district court the proper factual assumption and review its legal determination for error on that basis? Surely we must pay some attention—though we seek only what was likely assumed rather than what should have been—to what summary judgment procedure properly applied would have identified as the facts to be assumed in making the legal determination. That, after all, must be taken as the process that guided the district court in identifying those predicate facts. But “likely” presumes the possibility of error in that ultimate assumption, and error that must be tolerated in order to confine interlocutory review within its “purely legal” bounds. The best evidence, after all, of what a district court has “likely assumed” as its predicate facts is not what the court of appeals believes it should have assumed, but the district court’s legal determination that on the facts it did assume (rightly or wrongly) a violation was shown.
Seeking on that basis what facts the district court here “likely assumed,” as opposed to what it should have assumed on the summary judgment record, the answer seems plain to me. And, plainly to support the court’s determination that on those assumed facts, a violation was shown. My analysis would run as follows:
The district court’s specific statement of the predicate facts it assumed is meager: “it appears from the factual allegations that prison inmates are allowed liberal access to alcoholic beverages and dangerous weapons”; corrections officers therefore were “bound to know that the safety of other inmates was at risk.” J.A. 81-82. Elsewhere, however, as directly indicative of its reasoning, the court referred to record materials that could show a number of material facts: that just before the incident at issue, certain of the appellant-officers were aware that Winfield and his eventual attacker, Gibson, had been drinking wine with other inmates in Gibson’s cell; that the plaintiff and Gibson got into a fight but then, went into their respective cells; that the appellant-officers “could have locked the inmates in their cells but failed to do so”; that “[sjhortly thereafter, Gibson apparently ran out of his cell and struck [appellant] Williams with his homemade shank” before entering Winfield’s cell and stabbing him; that a third inmate, Scott, intervened in the fight and subdued Gibson while “certain [appellants] watched Scott intercede but did nothing to assist him”; and that the [appellants] assert that [appellant] Walker immediately signaled for help, but that the assault was over by the time other officers arrived 6n the scene.” J.A. 78-79.
Looking beyond these materials specifically identified by the court, other portions of the record flesh out the court’s apparent factual assessment of the situation revealed. Winfield’s affidavit asserted that an officer Choice saw his original fight with Gibson but did nothing until several other officers converged on the scene. J.A. 66-67. These officers or at least some of them could be found to have known that the inmates had been drinking, J.A. 69, and, according to the district court, that they had easy access to weapons, J.A. 82. Following their fight in the presence of some of the appellants, Gibson and Winfield went to their cells, but the guards failed to take the obvious step that would have put an end to any immediate danger; that is, close and lock the cells. See J.A. 78 (District Court Op.). Even after Winfield, by his own account, had several times pressed the buzzer that indicated that he wanted his door closed and locked, the guards did nothing and the door remained open. J.A. 67. Meanwhile, according ■ to Winfield, “Gibson was mouthing off to the officers as he went to his cell making threats that he was going to ‘squash this now1, referring to me.” J.A. 67. Some indeterminate but brief time after Gibson went into his cell, he retrieved a shank and then reemerged from his cell.
Gibson then entered Winfield’s cell and began to stab him as two officers stood and watched. J.A. 68. At a later grievance meeting, Williams stated that the reason he did not intervene was that a Lt. Hicks had ordered the officers not to go into the cells. *552 J.A. 68. Neither the timing of nor the reason for that order, if it was given, appear in the record. As two officers watched the stabbing in progress, a third inmate, one John Scott, pushed through the two officers at the door to the cell and did intervene. Neither officer came to Scott’s aid, however. J.A. 68. According to this inmate, the officers continued to stand by doing nothing even after Scott had gotten Gibson’s weapon hand under control. J.A. 57. During this struggle with Gibson, according to Scott, Scott, asked for help from the guards, several of whom were standing at the door “with enough man-power to take control” if they had only been willing to respond to Scott’s request for help. But the guards were not willing to act. J.A. 57.
Of course, the appellants’ summary judgment motion and supporting materials present an alternative factual scenario in which they are completely blameless, certainly not deliberately indifferent to Winfield’s plight. The majority, accepting critical aspects of their account as “undisputed” by any properly countering materials from Winfield as non-movant, finds error in the district court’s legal determination.[9]
But, as indicated, it is plain from the record that the facts as asserted in the appellants’ motion papers were not those “likely assumed” by the district court. Instead, it is obvious that that court assumed—and plausibly. in this case assumed (though that is not critical)—a quite different scenario adequately inferable from Winfield’s pleading and supporting materials. Under that “likely assumed” scenario, prison guards who were aware that inmates in the Winfield/Gibson cell-block area had access to alcoholic beverages and that some possessed dangerous weapons, did nothing to put a stop to conduct that they were bound to know posed a general risk of violence and harm to all inmates. Having witnessed a fight between Gibson and Winfield that occurred in that general atmosphere, some of the appellant-guards deliberately chose not to lock the two in their respective cells, either on their own initiative or in response to Winfield’s request for protection by sounding his alarm buzzer. When Gibson then rushed out of his cell towards and into Winfield’s where he stabbed him repeatedly with a metal shank, none of the appellants made any effort to intervene, though an opportunity was clearly presented to attempt prevention or interruption of the stabbing without risk of any greater harm than is a normal incident to the official responsibilities of the position occupied. In all this, the appellant-guards involved, though aware of a serious risk that one prisoner would harm another, adopted a stance of deliberate indifference to that risk, choosing instead to leave the matter to be resolved by the inmates rather than risk any harm to themselves.
If those “likely assumed” facts were established in proof—as they might or might not be—the conduct involved would constitute violation of a clearly established right of which reasonable officials in these appellants’ positions would be aware. See Farmer v. Brennan, 511 U.S. 825, 831, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (recognizing right as established in earlier cases).
If this issue were properly before us, the district court’s denial of summary judgment on the basis of these assumed facts should, therefore, be affirmed.
Ill
Seeking to clarify that which, under collateral order doctrine, is reviewable by appeal from interlocutory orders denying summary judgment on qualified immunity grounds, the Supreme Court in Johnson v. Jones recog *553 nized that making the distinction between “fact-related” and “purely legal” determinations that the doctrine required sometimes would pose conceptual and practical problems for courts of appeals. Two of those problems (assuming the related issue is before us for review) are presented in this appeal to a court for which they are new issues under Johnson’s new (for this court) appellate review regime. One is the problem of identifying the predicate facts “likely assumed” by a district court in making its purely legal determination that on those facts a violation of clearly-established constitutional right has been shown when those facts have not been expressly stated by the court. The other is the nature and scope of review of that purely legal determination when it has properly been appealed. In my view, the majority here has failed properly to apply Johnson’s teaching to either of these.
The first, fortunately, is not likely to recur too frequently. If this case teaches anything, it is the special need for express statements by district courts of the predicate facts they have assumed in ruling that on those facts a violation of clearly-established constitutional right has been shown. That lesson absorbed should spare us from more cumbersome searches for facts “likely assumed.”
The other problem—what it means when reviewing a district court’s purely legal determination to “take as given” the predicate facts assumed by that court as the basis for its determination—will persist. On that problem, the majority has now spoken but, with all respect, wrongly in my view and with unfortunate consequences—both for the courts and for § 1983 claimants, the deserving among them as well as the undeserving.
Judges K.K. HALL, MURNAGHAN, ERVIN and MICHAEL authorize me to say that they join in this opinion.

. A possible semantical problem in making the required conceptual distinction should be noted. Both of the issues that can be raised by motions for summary judgment on qualified immunity grounds—whether the facts, as assumed, show a violation of a clearly-established right of which a reasonable official in defendant's position would have known, and whether there are genuine issues of material fact respecting a factual basis for the defense—are issues of law whose resolutions require determinations "as a matter of law.” See Mitchell, 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9 (whether violation shown); Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987) (whether genuine issues of material fact exist). The required distinction, therefore, is not between determinations "of fact” and determinations "as a matter of law,” but, as the Court put it, between "fact-related” determinations (the genuine-issue determination), see Johnson, — U.S. at ——, 115 S.Ct. at 2153, and "purely legal” determinations (that on facts assumed, a violation is shown). See id. at —, 115 S.Ct. at 2156. That particular "legal issues" may be so "fact-related” as not to be "pure” legal issues for particular procedural purposes is a general proposition that has been recognized in other contexts. See, e.g. Griffin v. United States, 502 U.S. 46, 58-59, 112 S.Ct. 466, 473-74, 116 L.Ed.2d 371 (1991) (insufficién-cy of evidence to convict on one of alternative factual theories is not ground for vacatur of general verdict of guilt where other ground is supported; though technically a "legal error,” evidence insufficiency involves a "mistake concerning the weight or the factual import of evidence" that is not the kind of "legal error” concerning a "mistake about the law” that would require vacatur).

. Behrens v. Pelletier, — U.S. —, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), provides an interesting example of a case treated by the Supreme Court as involving such an alternatively based motion and therefore a dually-based denial order. Though principally concerned with whether under Mitchell public officials could successively appeal denials of 12(b)(6) motions to dismiss and Rule 56 motions for summary judgment on qualified immunity grounds, the Court had also to deal with the respondent’s alternative contention that the summary judgment denial order was not in any event appealable under Johnson because it was expressly based on a determination that "[m]aterial issues of fact remain.” Id. at —, 116 S.Ct. at 842 (internal quotation marks omitted). Not so, said the Behrens Court: "denial of summary judgment often includes a determination that there tire controverted issues of material fact ... ”, id., but this does not mean that where, as in the case at hand, the denial also “necessarily determined that certain conduct attributed to peti *545 tioner (which was controverted) constituted a violation of clearly established law," the latter determination also is not appealable. Id. It is appealable under Johnson said the Court, which then reversed the court of appeals' dismissal and remanded to that court to undertake review of the purely legal determination. Id.

. Conceptually, abstraction into "pure" law occurs in the process of taking as a “given” or as "undisputed" "for appellate purposes" the facts assumed by the district court as predicates for its legal determination. See Johnson, — U.S. at —, —, 115 S.Ct. at 2156, 2159; see also Behrens, — U.S. at —, 116 S.Ct. at 842 (public official may "claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the Harlow standard of 'objective legal reasonableness'") (emphasis added).

. As a moment’s reflection will demonstrate, if de novo review of the district court's identification of the factual predicates for its purely legal determination is not precluded, courts of appeals can by that means effectively engage in the very evidence-sufficiency review that Johnson directly forbids. To ask the question what facts the district court should have assumed in determining whether, applying the summary judgment standard, they showed a violation of clearly established right of which a reasonable official in defendant's position would have known, is indistinguishable in practical effect from the process of asking whether there were, as determined by the district court, genuine issues of fact respecting whether under the circumstances a reasonable official in defendant’s position would have known that his conduct would violate the claimed right.
It is exactly by this back-door route that I believe the majority in this case has effectively conducted the de novo genuine-issue review forbidden by Johnson. See Part II.B., post.

. Though a factual defense of this sort—"didn’t do it," or “didn't have the requisite intent"—goes as well to the merits of a § 1983 claim, its assertion, as the basis for qualified immunity dismissal is both conceptually sound and practically warranted. And it of course provides the most complete example of an intertwining/hence inseparability for interlocutoiy review purposes, of the claim on the merits and the qualified immunity defense. See Johnson, — U.S. at —, —, 115 S.Ct. at 2157, 2158.

. Which is said with no implied criticism of the court. Under this court's pre-Johnson precedents, neither litigants nor district courts were on notice of any need for special precision in making and ruling on summary judgment motions on qualified immunity grounds. Under our unrestricted scope of review regime, we had no occasion to differentiate between the fact-related and purely legal grounds of orders denying summary judgment, and litigants and district courts therefore properly felt no compulsion to help us in that respect.
; That we deal in this case—deemed by a majority of the court to be sufficiently important for en banc consideration—with such an imprecise record may well suggest the improvidence of that decision. Hard cases, in the substantive sense, tempt courts to make bad law, and so may poorly developed records, particularly those created under a procedural regime which no longer controls on appeal. But—here we are.

. Here is one of the anomalies that might be expected in a pr e-Johnson district court ruling in this circuit, and that probably will not recur under the new regime. See note 6, ante. As indicated, the defendant officers did not-—certainly did not clearly—raise the “purely legal” issue in their motion, instead apparently conceding or assuming it arguendo, in relying solely on their factual defense. The district court’s ensuing statement that the right asserted was a well-settled one was therefore probably not technically a "determination” of a contested legal issue, but a passing comment that could not have been thought in pr e-Johnson days to have any consequence for interlocutory review of the denial order.

. No one could suggest that this is one of those cases where, in an exercise of our discretion, we should, because of special circumstances, consider an issue not actually raised and determined by the district court. See Singleton v. Wulff, 428 U.S. 106, 120-121, 96 S.Ct. 2868, 2877-78, 49 L.Ed.2d 826 (1976) (general rule subject to exception only in special circumstances such as the need to avoid “clear injustice” or where "resolution is beyond any doubt"). This surely is no such case. Indeed, the ambiguous record and novelty, for us, of the issues presented strongly militate against using this case as a vehicle for definitive exploration and application of Johnson 's new (for us) appellate review regime.

. Incidentally,' it bears noting that even if the court were properly conducting a straight de novo review, it would not be justified in accepting certain of the critical facts it relied on as “undisputed” because Winfield as non-movant did not counter them head-on. Where, as was the case here, a movant's forecast of critical evidence is undisputed for the obvious reason that it was in exclusive control of the movants (e.g. that no guard knew that Gibson had a shank; that the guards followed proscribed procedures when Gibson emerged from his cell), the nonmoving party cannot be considered under obligation to deploy specific facts challenging the credibility of the movant's assertions. See 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc.: Civil § 2726 at 120-21, § 2727 at 137-43 (1983). At the time these facts were said to have occurred, Winfield was in his cell with no means of disputing them directly.