**David L. DELPH, Plaintiff,**

v.

**D. TRENT, et al., Defendants.**

**No. Civ.A. 99–618–AM.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 8, 2000.

David L. Delph, Jarratt, VA, plaintiff pro se.

William Wayne Muse, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Plaintiff, a Virginia inmate proceeding *pro se*, has filed this 42 U.S.C. § 1983 suit alleging that defendants violated his constitutional rights. Plaintiff, who is presently incarcerated in the Mental Health Unit (MHU) at Greensville Correctional Center (GRCC), alleges that defendants Garraghty, Trent, Pugh, and Swetter created or condoned official policies, procedures, and customs that allowed plaintiff to be assaulted by another inmate and which denied plaintiff adequate medical care for his injuries from the assault. Plaintiff also alleges that defendant Rogers deliberately allowed plaintiff to be assaulted.

All defendants have filed dispositive motions and plaintiff has replied to these motions. It has come to the Court's attention, however, that plaintiff has also filed a Motion for Limited Discovery. Defendants have responded by filing a Motion for a Protective Order and several Objections to this discovery. Defendants argue that they have asserted a defense of good faith qualified immunity and they request that the Court stay discovery until resolution of this issue. As the Court finds that it requires additional information before it may resolve the issue of qualified immunity, the Court will grant plaintiff's motion for discovery, but will limit the scope of required discovery.

Furthermore, the Court finds that plaintiff has not sufficiently stated an Eighth Amendment claim against defendant Rog-

ers. Accordingly, Rogers will be dismissed.

### I.

The doctrine of good faith qualified immunity shields government employees performing discretionary functions from civil liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir.1995). For an individual official to be held liable, the "contours of the law must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Judging whether qualified immunity attaches turns on a standard of objective reasonableness. *Id.* at 639, 107 S.Ct. 3034. This immunity defense provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In determining whether the right allegedly violated was clearly established "the proper focus is not upon the right at its most general or abstract level but at the level of its application to the specific conduct being challenged." *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir.1994). The basic question for a court adjudicating a defense of qualified immunity, however, is whether official would have reasonably known his conduct violated clearly established law.

Here, the conduct at issue is whether defendants Garraghty, Trent, Pugh, and Swetter created or condoned policies, practices, or customs which allowed plaintiff to be injured and failed to provide adequate medical care. Therefore, plaintiff seeks to hold defendants liable in their roles as supervisors.

It is a well-established principle that *respondeat superior* is not a basis for liability under 42 U.S.C. § 1983. Phrased differently, § 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort. *See Monell v. Department of Soc. Serv. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The doctrine of supervisory liability, however, renders supervisors liable under § 1983 for constitutional torts committed by employees in furtherance of official policies, including regulations, ordinances, decisions, and informal customs. *See id.* at 690–91, 98 S.Ct. 2018. The Fourth Circuit has held that supervisors may also be held liable for indifference or tacit authorization of subordinates' misconduct. *See Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984); *Wellington v. Daniels*, 717 F.2d 932, 935–36 (4th Cir.1983) (holding that municipalities may be liable for "omissions," which include indifference or tacit authorization).

In making a claim of supervisory liability in the prison context, a plaintiff has the burden of showing that "prisoners face a pervasive and unreasonable risk of harm from some specified source [and that] the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization ...'." *Slakan*, 737 F.2d at 373 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir.1980)). Moreover, a plaintiff "cannot satisfy this burden of proof by pointing to a *single incident or isolated incidents....*" *Id.* (emphasis added). Instead, supervisory liability may only be imposed where "there is a history of widespread abuse." *Wellington*, 717 F.2d at 936. Therefore, a plaintiff who is able to prove deliberate indifference, tacit authorization, or widespread and pervasive abuses may be able to establish supervisory liability under 42 U.S.C. § 1983.

As a result, there is a complex intersection between qualified immunity and supervisory liability. If a plaintiff can establish the requisite indifference in the face of a policy or widespread and pervasive abus-

es caused by a policy, the plaintiff may hold the responsible official liable in a supervisory capacity. However, if the official can respond that a reasonable person would not have known of the effects of the policy or that the policy violated clearly established laws, then that official is entitled to qualified immunity from suit.

 Plaintiff in the instant action alleges that his injuries resulted from policies, procedures, or customs in the MHU at GRCC. Plaintiff, however, can only describe those isolated incidents in which he was injured or was denied appropriate medical care. Plaintiff has not shown that other inmates were also injured by these policies, procedures, or customs, nor has plaintiff identified these policies, procedures, or customs with specificity. As a result, plaintiff has requested discovery to enable him to better establish his claims of supervisory liability.

 Generally, discovery is not appropriate when a defense of qualified immunity has been raised. *See Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. As the Supreme Court stated:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (citations omitted). The purpose underlying qualified immunity is to protect officials from the distractions that accompany civil actions, to remove inhibitions to discretionary action, and to encourage individuals to enter public service. *See Harlow*, 457 U.S. at 816, 102 S.Ct. 2727. To permit the plain-

tiff to seek discovery would expose an official to the types of abuses qualified immunity was intended to prevent. *See Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806.

The Supreme Court, however, has allowed limited discovery in the face of a qualified immunity defense, subject to the discretion of the trial court. *See Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1596, 140 L.Ed.2d 759 (1998). In doing so, the Court has constructed two hurdles the plaintiff must overcome to win the right to discovery. First, the trial court must insure that plaintiff has alleged a cognizable injury with sufficient specificity that officials are not subject to burdensome or unnecessary discovery. *See id.* The trial court may require the plaintiff to make specific factual allegations or may grant motions by defendant for more definite statements under Rule 12(e). Second, once plaintiff has made a sufficient allegation, the trial court must then resolve the threshold issue of immunity before proceeding to discovery. In doing so, the trial court must determine whether the officials violated clearly established law, assuming the plaintiff's allegations as true. If so, plaintiff may be entitled to discovery, subject to the discretion of the trial court and the limits of Rule 26. *See id.* at 1596–97. *Crawford–El* concludes:

> The trial judge can therefore manage the discovery process to facilitate prompt and efficient resolution of the lawsuit; as the evidence is gathered, the defendant-official may move for partial summary judgment on objective issues that are potentially dispositive and are more amenable to summary disposition.... Of course, the judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible.

*Id.* at 1597.

Here, the Court holds that limited discovery is necessary to resolve the issues of supervisory liability and qualified immuni-

ty. First, the Court finds that plaintiff has made sufficiently specific factual allegations and defendants have not moved for a more definite statement. Second, the Court finds that, taking plaintiff's allegations as true, plaintiff has stated a violation of clearly established law. Plaintiff has claimed violations of his Eighth Amendment rights, which premise liability on deliberate indifference. If defendants knew that their policies, practices, or customs resulted in serious injuries or imminent risk of serious injuries or denial of medical care and they took no steps to prevent these harms, then defendants were deliberately indifferent and could be held liable under the Eighth Amendment.

Allowing limited discovery enables the Court to resolve the issue of qualified immunity in the manner envisioned by *Crawford–El.* After he receives the requested information, plaintiff will either be able to establish supervisory liability or he will not find sufficient proof of widespread abuse. If plaintiff cannot prove supervisory liability, there is no need to reach the issue of qualified immunity and plaintiff's action may be dismissed. If plaintiff can prove supervisory liability, then the Court may proceed to determine defendants' qualified immunity defense.

Following this analysis, the Court finds that plaintiff is entitled to limited discovery to further develop his claim of supervisory liability.

## II.

Generally, parties may seek discovery on matters which are "relevant to the subject matter involved in the pending action...." Fed.R.Civ.P. 26(b). Parties need not confine their requests to those intended to produce admissible evidence alone, but may request information "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

While the range of discoverable information is broad, however, courts are empowered to set boundaries. For example, privileged matters are not discoverable.

*See id.* In addition, a court may *sua sponte* impose limits on discovery to prevent duplicative, unnecessary, or inefficient requests. *See* Fed.R.Civ.P. 26(b)(2)(i)–(iii). In particular, Fed.R.Civ.P. 26(b)(2)(iii) provides that a court may limit discovery requests when "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(iii). Furthermore, upon motion by a party, a court may enter a protective order against discovery requests if "justice requires [the order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed.R.Civ.P. 26(c).

Plaintiff has filed a Motion for Limited Discovery, in which he seeks:

(A) Prison policies, procedures, and records governing prisoner health services and care, promulgated pursuant to such state laws and policies as are described in Part VIII of the *STANDARDS FOR STATE CORRECTIONAL FACILITIES* promulgated by the Virginia Department of Corrections on or about January 16, 1998;

(B) Prison records, including without limitations "internal incident reports," "serious incident reports," and staff training and personnel records and policies pertinent to plaintiff's assault injuries, treatment, and actions described in the complaint, and pertaining to the lack of training and actions by prison staff prior to, during, and after plaintiff's said assault and injuries; and

(C) Prison records describing, memorializing, and/or authorizing and/or condoning the existence and effects upon other prisoners of the official policies, practices, and customs at issue prior to plaintiff's assault and injuries, and after prison staff reasonably should have rec-

ognized that those policies, practices, and customs would probably result in such assault and injury to prisoners like plaintiff.

In response to plaintiff's motion, all defendants have moved for a Protective Order against these requests and have filed specific objections. Defendants state that they intend to claim good faith immunity from suit in a motion for summary judgment and they argue that discovery should be stayed pending resolution of this motion and this defense. Defendants further claim that being required to produce otherwise available documents is burdensome.

The Court finds that plaintiff's discovery requests are relevant to his claims of supervisory liability based on policies, practices, and customs in effect in the MHU. Moreover, the Court finds that this discovery is reasonably calculated to lead to admissible evidence. Therefore, plaintiff's motion will be granted in part and defendants' motion will be denied in part. The Court, however, also finds that plaintiff's requests are often vague, overbroad, and unspecific. Therefore, the Court will grant defendants' motion for protective order in part and will deny plaintiff's motion in part, by narrowing the scope of the required discovery.

In addition to their Motion, defendants object to discovery request (A) on the grounds that this information is found in the 700 series of Department Operating Procedures (DOP). Defendants contend that this information is both voluminous and freely available through the law library and therefore they should not be required to produce it.

The Court will overrule defendants' objection to discovery request (A). Plaintiff has attached two request forms as part of his affidavit dated October 26, 1999. The first request is dated September 27, 1999 and requests the 700 series DOP from plaintiff's counselor. Plaintiff received the following response on September 29, 1999: "Be advised Mr. Labriola nor myself has access to the '700' series of the IOP. Please forward your request to the law library." The second request is also dated September 27, 1999 and requests the 700 series DOP from the law library. On October 12, 1999, plaintiff received the following response: "The 700 series IOPS are not housed in the law library. Try contacting your HG MGR, your counselor, or CMS." Therefore, the Court finds that, contrary to defendants' objection, the 700 series procedures are not found in the law library. Moreover, it is unclear that prison administrators themselves know where this information may be found. Accordingly, this objection will be overruled and defendants will be required to produce the requested discovery, subject to certain limitations.

Defendants have filed a objection to discovery request (B) on the grounds that this request is too vague and overbroad. While the Court finds plaintiff's request relevant, the Court agrees that, as stated, plaintiff's request is vague and overbroad. Therefore, the Court will grant sustain the objection in part and overrule the objection in part. Defendants will not be required to produce all information specified in discovery request (B).

Defendants object to discovery request (C) on the grounds that the request is "virtually unintelligible" and does not identify the types of documents plaintiff is requesting. The Court finds plaintiff's request relevant but agrees that the request is vague and overbroad. Therefore, the Court will also sustain defendants' objection in part and will overrule it in part. Defendants will not be required to produce all information specified in discovery request (C).

Accordingly, the Court holds that defendants must produce the following discovery to plaintiff:

*Discovery Request (A):* Defendants will be required to provide those policies, procedures, and records relevant to the administration of the MHU;

*Discovery Request (B):* Defendants will be required to produce all records and reports pertaining to the assault on plaintiff and his subsequent medical treatment. Moreover, defendants will be required to produce all official policies and practices relevant to inmate assaults in the MHU and provision of medical care in the MHU; and

*Discovery Request (C):* Defendants will be required to indicate to plaintiff how many assaults have taken place during this period and whether the parties involved were inmates, MHU staff members, or security officers. To the extent possible, defendants should also indicate if medical care was necessary after each assault and whether, or to what extent, it was provided.

Plaintiff will be directed to file an amendment to his complaint which specifically addresses his allegations of supervisory liability and a response to defendants' defense of qualified immunity. Because of the ongoing nature of this proceeding, defendants' dispositive motions will be dismissed as premature, but defendants will be advised of their right to respond to any filings by plaintiff, including their right to refile dispositive motions.[1]

### III.

█ Finally, the Court will dismiss plaintiff's claims against defendant Rogers. Plaintiff has alleged that Rogers allowed and assisted another inmate named Willard to confront and assault plaintiff.

Plaintiff has therefore alleged that Rogers violated his Eighth Amendment right to be free from cruel and unusual punishment in the form of assault by other inmates. Because the Court does not find that Rogers acted with the requisite deliberate indifference, Rogers will be dismissed.

According to plaintiff, on August 3, 1998, he was playing chess in the MHU when inmate Willard confronted him and threatened him. This confrontation was observed by Rogers and other MHU staff members. Out of concern for his safety, plaintiff returned to his cell and locked himself in. Shortly afterwards, plaintiff states that Rogers ordered his cell door open. Taking this as a sign that the MHU was secure and that it was safe to return, plaintiff left his cell. As he approached the stairway to his housing tier, he saw inmate Willard coming up the stairs accompanied by Rogers. Plaintiff began to retreat, but inmate Willard assaulted him by striking him in the face.

Defendant Rogers joined in the Motion for Summary Judgment and filed an affidavit. According to Rogers, she was aware that Willard was hostile toward plaintiff. Following the confrontation in the MHU, she ordered plaintiff's cell door closed to prevent him from returning. Plaintiff, however, slipped out of his cell before the door was completely closed. As plaintiff and Willard met near the stairway, Rogers stood between them and ordered both to return to their cells. Nei-

---

1. The Court is mindful that defendants have filed dispositive motions, including a motion for summary judgment. In reviewing a motion for summary judgment, courts must view the facts in the light most favorable to the party opposing the motion. *Porter v. United States Alumoweld Co.,* 125 F.3d 243, 245 (4th Cir.1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party in entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could ... return a verdict for the non-moving par-

ty." *Amos v. Maryland Dep't of Pub. Safety & Correctional Servs.,* 126 F.3d 589, 609 (4th Cir.1997). "When a motion for summary judgment is made and supported ... [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Because the record is not complete yet, the Court is unable to resolve defendants' motion for summary judgment. Accordingly, the Court will order discovery and allow additional opportunities to develop the record.

ther inmate obeyed. Rogers ordered them to return to their cells a second time. Willard then shoved Rogers aside and began to assault plaintiff. Rogers called for backup and restrained Willard.

Plaintiff has responded but has not directly refuted Rogers' account of the incident. Instead, plaintiff offers to provide corroborating statements from Correctional Officer Hairston, who witnessed portions of the incident. Moreover, plaintiff states that Rogers failed to call for backup until after the assault occurred.

 Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. *See Pressly v. Hutto*, 816 F.2d 977 (4th Cir.1987); *see also Ruefly v. Landon*, 825 F.2d 792 (4th Cir.1987). Deliberate indifference in the face of a pervasive risk of harm also states an Eighth Amendment claim. *See Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.), *cert. denied*, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991); *Shrader v. White*, 761 F.2d 975, 979 (4th Cir.1985) (inmate must suffer "significant mental distress" and danger must be "totally without penological justification"). Prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (subjective state of mind requirement); *see also Price v. Sasser*, 65 F.3d 342 (4th Cir.1995); *Taylor v. Freeman*, 34 F.3d 266, 271 (4th Cir.1994).

Here, the Court finds that plaintiff was exposed to a specific risk of harm sufficient to establish an Eighth Amendment violation. The Court does not find, however, that Rogers disregarded or was deliberately indifferent to this risk of harm.

Rogers has stated, and plaintiff has not directly refuted, that she ordered the cell doors closed to keep plaintiff away from Willard. Moreover, Rogers has also stated that once the confrontation began, she stepped between the inmates and attempted to restore order. When the situation became violent, Rogers states that she called for backup and restrained Willard. Rogers' actions show that, instead of being indifferent to plaintiff's safety, Rogers took affirmative steps to protect plaintiff, including exposing herself to the same danger.[2] Therefore, the Court finds that Rogers was not deliberately indifferent in violation of the Eighth Amendment and will dismiss Rogers as a defendant.

## IV.

For the reasons stated above, an appropriate Order will issue.

---

**2.** While the Court finds that Rogers was not deliberately indifferent, there are indications in the record that Rogers may have been negligent, e.g., by failing to react to Willard's initial threats or by failing to effectively insure that plaintiff was safely in his cell. Negligence alone, however, is not enough to establish an Eighth Amendment violation. *See Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.), *cert. denied*, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991); *Pressly v. Hutto*, 816 F.2d 977 (4th Cir.1987).